The **UNITED STATES** of America on Relation of Henry **ROLLINGSON** and Lloyd J. Heppler, as Individuals, and St. Marys Lakeshore Development Corporation, a corporation, Petitioners,

v.

**BLACKFEET TRIBAL COURT OF** the **BLACKFEET INDIAN RESERVATION**, Browning, Montana, and Earl F. Brown, Tribal Judge, Defendants.

Civ. No. 2510.

United States District Court

D. Montana,
Great Falls Division.

Aug. 3, 1965.

Donovan & Bayuk, Shelby, Mont., for plaintiffs.

Frisbee & Moore, Cut Bank, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, District Judge.

This is a petition for a writ of prohibition. The petitioners are two individuals, both citizens and residents of Canada, and a Montana corporation. The defendants are the Blackfeet Tribal Court of the Blackfeet Indian Reservation and a tribal judge of that court. The petitioners seek to restrain the defendant tribal court from carrying to execution an alleged judgment entered against one of the petitioners as an individual and to prohibit the tribal court from proceeding further with an order to show cause issued against the other individual petitioner and the corporation.

A hearing was held on the petition on January 25, 1965, oral argument was presented, and a brief was filed on behalf of the petitioners.[1] Defendants have failed to file a brief.

The petition alleges: The individual petitioners are stockholders in the petitioner corporation. The corporation holds a lease on certain land within the boundaries of the Blackfeet Indian Reservation.[2] On August 12, 1964, an order to show cause was served upon the petitioner Rollingson requiring him to appear before the defendant Earl F. Brown, Judge of the Blackfeet Tribal Court, or be perpetually restrained from entering the reservation.[3] No service of the order

---

1. Since petitioners' brief was filed, the Court of Appeals for the Ninth Circuit has decided the cases of Colliflower v. Garland, 342 F.2d 369 and Littell v. Nakai, 344 F.2d 486. The effect of both decisions will be considered in this opinion.

2. This lease, which is attached to the petition as Exhibit C, is between The Blackfeet Tribe of the Blackfeet Reservation of Montana, as lessor, and St. Marys Lake Development Corp. as lessee. It was executed April 23, 1962, for a term of 25 years and was approved by the Secretary of the Interior acting through the area director.

3. A copy of the order to show cause is attached to the petition as Exhibit "A". This document names Carl Arnoux as Plaintiff and Henry Rollingson and Lloyd J. Heppler as individuals, and St. Marys Lakeshore Development Corporation as defendants. The order reads in pertinent part:

"On receiving Complaint of Carl Arnoux, a duly enrolled member of the Blackfeet Tribe setting forth a crime committed against his property located

was made on Heppler or the corporation. Rollingson and Heppler appeared specially before the tribal court and objected to its jurisdiction to hear the case. The tribal judge ruled that the court had jurisdiction, entered oral judgment against Heppler as an individual and ordered him to leave the reservation within ten days. The order to show cause is still pending before the tribal court as to Rollingson and the corporation.

The petition alleges further that the oral ruling of the tribal court ordering Heppler to leave the reservation was in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, in that he was being deprived of property without due process of law and the equal protection of the law. Petitioners claim that there is no adequate remedy at law; that an enrolled member of the Blackfeet Tribe is attempting to terminate the lease by ·forcible ejectment from the reservation of the corporation and its officers; that the action would destroy the $20,000 investment the corporation has on the Blackfeet Indian Reservation; and that petitioners are not trespassers but are rightfully on the reservation under their lease.

Upon the foregoing allegations and contentions petitioners seek the writ of prohibition.

█ The relief sought by the petitioners is available, if at all, from this court by virtue of 28 U.S.C. § 1651, popularly known as the "All Writs Act". This section provides in part:

"(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary. or appropriate in aid of their·respective jurisdictions and agreeable to the usages and principles of law."

However, this statute may be invoked in a district court only as an aid to already existing jurisdiction. Stafford v. Superior Court of the State of California, in and for County of Los Angeles, 9 Cir. 1959, 272 F.2d 407; Shimola v. Local Board No. 42 for Cuyahoga County, N.D. Ohio, 1941, 40 F.Supp. 808. Accordingly, the initial question which must be considered is whether the petitioners have met the requirements for invocation of federal jurisdiction.

Petitioners do not set forth clearly in either their petition or supporting brief the basis of the jurisdiction of this court. Since they are not seeking relief by virtue of any special statute conferring jurisdiction, they must rely upon either 28 U.S.C. § 1331 or 28 U.S.C. § 1332.

█ The petition alleges that "there is diversity of citizenship". It appears, however, that while the individual petitioners are citizens of Canada, the corporate petitioner is·a Montana Corporation. Since the defendant Brown is also a Montana citizen, the requisite diversity does not exist. See 28 U.S.C. § 1332; City of Indianapolis v. Chase National Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47, where the Court said:

"* * * To sustain diversity jurisdiction there must exist an 'actual', (citing cases), 'substantial', (citing cases), controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side."

█ Both section 1331 and section 1332 require a jurisdictional amount of $10,000, exclusive of interest and costs. The only allegation as to amount in the petition is the statement that the corporation's $20,000 investment would be

on St. Marys Lake committed by the defendants involving trespass, property damage and wrongful taking of his dwelling house, and good cause appearing therefor, (it is ordered that the defendants appear and) show cause why they should not be forceably ejected from the Blackfeet Indian Reservation in accordance with the Blackfeet Tribal

Law and Order Court for the aforesaid Complaint.

"IT IS FURTHER ORDERED that in the event that the said defendants fail to appear personally and show cause as above stated then a formal order will be made perpetually restraining them from entering upon the Blackfeet Reservation."

destroyed if the lease is terminated and the corporation and its officers are forcibly ejected from the reservation. There is no allegation with respect to the value of the interests of the individual petitioners which are allegedly affected by the action of the Tribal Court. Consequently, even if the corporation were eliminated as a petitioner, there would then be no allegation of jurisdictional amount which would sustain jurisdiction under the diversity statute.

█ Apart from any question as to jurisdictional amount, is the matter in controversy one "arising under the Constitution, laws or treaties of the United States" within the meaning of 28 U.S.C. § 1331? "A case in law or equity * * may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either." Cohens v. Virginia, 1821, 6 Wheat. 264, 19 U.S. 264, 378, 5 L.Ed. 257. Since the decision in this case does not depend upon the *construction* of the Constitution, laws or treaties of the United States, it does not meet this basic test.

█ It seems clear from Littell v. Nakai, supra, decided by the Court of Appeals for the Ninth Circuit on April 16, 1965,[4] that this court lacks jurisdiction. Littell, a non-Indian, was general counsel of Navajo Tribe of Indians, with a written contract approved by the Secretary of the Interior. He brought suit against the chairman of the tribe to secure an injunction based on alleged tortious interference with his performance of his contract. He alleged, inter alia, that the defendant had prevented him from appearing before the Tribal Council, had caused him "to be forcibly ejected from the Council Chamber", and had prohibited the tribe from paying accrued retainer fees amounting to more than $10,000. Littell contended that the contract "vested plaintiff with legally recognized rights entitled to judicial protection". In holding that this was not suf-

ficient to present a federal question that would vest the court with jurisdiction the court stated:

"But '[a] suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law upon the determination of which the result depends.' Schulthis v. McDougal, supra, [225 U.S. 561] at page 569, 32 S.Ct. [704] at page 706, [56 L.Ed. 1205]. From the pleading it is apparent that the 'real substance of the controversy' [Gully v. First Nat'l Bank, 299 U.S. 109, 114, 57 S.Ct. 96, 8 L.Ed. 70 (1936)] centers upon the contract and its construction rather than the statutory basis for the contract, and as said in Puerto Rico v. Russell & Co., 288 U.S. 476, 483, 53 S.Ct. 447, 450, 77 L.Ed. 903 (1933) 'The federal nature of the right to be established is decisive—not the source of the authority to establish it.' "

Even though the court agreed with Littell "that his complaint discloses all of the facts required by 28 U.S.C. § 1332 to invoke the diversity jurisdiction of the court", it was held that the complaint, affidavits and other material showed "that this controversy is of the type within the exclusive jurisdiction of the Navajo Tribal Court". The court emphasized the semi-independent status of the Indian tribe and the governmentally recognized and protected autonomy which the tribe retained over its internal affairs as outlined by the Supreme Court in Williams v. Lee, 1959, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. A part of this internal affairs autonomy was the right of the tribe "to regulate the handling of and exercise control in disputes over property and property rights" (344

---

4. Petition for certiorari has been filed, but the Supreme Court has not yet acted on the petition. Barring reversal, this court, of course, is bound by the decision in this case.

F.2d at 489). And, although congressional power to regulate these internal affairs was recognized, if such authority had not been exercised tribal control still existed.

Although the Williams and Littell cases, supra, were concerned with the Navajo Tribes in Arizona the factual bases relied upon there to show the continuing existence of tribal authority closely parallel those found with the Blackfeet Tribe in Montana. The original treaties with the two tribes are similar in language (compare Treaty with the Navajo Indians, 15 Stats. 667 with Treaty with the Sioux Indians (including Blackfeet band), 15 Stats. 635), and, like the Navajos, the Blackfeet have greatly improved their legal system and have adopted and are operating under a "Law and Order Code" very similar to that set forth in 25 C.F.R. 11 (1958). The same rationale as that found in Littell and Williams would seem equally applicable in the instant case and compels the conclusion that the matters arising out of the lease are internal affairs of the tribe and can be determined solely in the tribal court.

Littell v. Nakai was decided subsequent to Colliflower v. Garland, supra, were the court held that this court had jurisdiction in a "habeas corpus proceeding to inquire into the legality of the detention of an Indian pursuant to an order of an Indian court". The court there stated, however, that it "does not follow from our decision that the tribal court must comply with every constitutional restriction that is applicable to federal and state courts". (342 F.2d at 379). I find nothing in the Colliflower decision which would affect the right of the tribal court to hear substantive questions within its jurisdiction. In any event, Littell v. Nakai and Williams v. Lee are controlling on the basis of the allegations in the petition and supporting documents.

This does not mean that this court approves the procedure followed by the tribal court in this case. If the allegations of the petition are true, the procedure followed by the tribal court did not meet the requirements of due process; nor did it comply with the provisions of the Law and Order Code outlining the jurisdiction of the tribal court.

While this court lacks jurisdiction to grant the writ of prohibition sought by petitioners, it does seem appropriate to suggest to the tribal court that it should follow the requirements of due process not only in this case, but in all matters within its jurisdiction. This is the plain directive of the Wheeler-Howard Act and is implicit in the holding of Colliflower. A failure to comply with the requirements of due process in many tribal and Indian courts has been disclosed in recent congressional investigations and has resulted in corrective legislation now pending in Congress.

For the reasons hereinabove set forth, it is hereby ordered that the petition for a writ of prohibition is denied, and this action is dismissed for lack of jurisdiction in this court.