**John DODGE et al., Plaintiffs,**

**v.**

**Raymond NAKAI et al., Defendants.**

**No. Civ–1209 Pct.**

United States District Court
D. Arizona.

Dec. 20, 1968.

**20**

Jeremy E. Butler and Monroe G. McKay, of Lewis, Roca, Beauchamp & Linton, Phoenix, Ariz., for plaintiffs.

Harold E. Mott, Albuquerque, N. M., and Edmund D. Kahn, Window Rock, Ariz., for Navajo Tribe of Indians.

## OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

CRAIG, District Judge.

This action is brought on behalf of three plaintiffs: (1) a class of indigent Navajo Indians who secure legal assistance from Dinebeiina Nahiilna Be Agaditahe, Inc., (hereinafter called DNA), a nonprofit legal services corporation organized under the laws of the State of Arizona and financed by the Office of Economic Opportunity; (2) DNA and eight Navajo Indians who serve on the board of directors of DNA; and (3) Theodore R. Mitchell, a nonmember of the Navajo tribe who serves as executive director of DNA. The complaint names three defendants: (1) Raymond Nakai, Chairman of the Navajo Tribal Council; (2) V. Allen Adams, Superintendent of the Navajo Police Department; and (3) Graham Holmes, Area Director of the Navajo Indian Reservation of the Bureau of Indian Affairs. The central event common to all causes of action is the exclusion of the plaintiff Mitchell from the Navajo Indian Reservation. His exclusion was ordered by the Advisory Committee of the Navajo Tribal Council. The order was enforced by defendants Nakai and Adams, with the concurrence of defendant Holmes. Plaintiffs assert that the exclusionary order was illegal and unlawful, and that as a result plaintiffs were deprived of rights secured to them by the United States Constitution and various Acts of Congress. Defendants move to dismiss, asserting that this Court is without jurisdiction. The issues presented are complex.

Plaintiffs assert that the Court has jurisdiction under five sections of the United States Code: Title 28 U.S.C. I. § 1651, II. § 1361, III. § 1343(1), IV. § 1331 and V. § 1343(4).

■ I. Title 28 U.S.C. § 1651 may be invoked in a district Court only as an aid to already existing jurisdiction. *See* Stafford v. Superior Court, 272 F.2d 407 (9th Cir. 1959); United States ex rel. Rollingson v. Blackfeet Tribal Court, 244 F.Supp. 474 (D.Mont.1965). If this Court has jurisdiction, it does so by virtue of some other provision.

■ II. Title 28 U.S.C. § 1361 provides that the district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This provision can affect the jurisdiction of this Court only with respect to defendant Holmes, the other defendants not being officers or employees of the United States or an agency thereof. With respect to defendant Holmes, this provision does not confer jurisdiction upon this Court. First, plaintiffs seek injunctive relief and damages, not mandamus. Second, plaintiffs sue defendant Holmes in his individual capacity, not as an officer or employee of the United States. Third, plaintiffs do not complain that defendant Holmes has failed to act, but rather that he has acted. Insofar as plaintiffs seek to direct a retraction of action already taken, mandamus is not a proper remedy. *See* Rural Electrification Administration v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967). Finally, mandamus is an extraordinary remedial device that may issue only when the claim for relief is clear and certain, and the duty of the officer involved is ministerial, plainly defined, and preemptory. *See* Prairie Band

of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir. 1966). Plaintiffs do not allege facts that would justify the granting of mandamus, and the Court is without jurisdiction under Title 28 U.S.C. § 1361.

III. Title 28 U.S.C. § 1343(1) provides that the District Courts shall have original jurisdiction of civil actions based upon acts done in furtherance of any conspiracy mentioned in Title 42 U.S.C. § 1985. The relevant statutory language in Title 42 U.S.C. § 1985(3) states:

> "If two or more persons in any State or Territory conspire * * * for the purpose of depriving * * * any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, [and] * * * if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy * * * the party so injured or deprived may have an action for the recovery of damages * * * against any one or more of the conspirators."

■ It has been held that this portion of Title 42 U.S.C. § 1985(3) is applicable only when the defendant-conspirators are alleged to have acted under color of state law. *See* Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Paynes v. Lee, 377 F.2d 61 (5th Cir. 1967); Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1966). Defendants in this case acted under color of authority vested in them either by virtue of an order of the Advisory Committee of the Navajo Tribal Council or by virtue of duties possessed by the holder of a federal office. Such actions are not "under color of *state* law" and do not give rise to a cause of action under Title 42 U.S.C. § 1985(3). *Cf.,* Toledo v. Pueblo De Jemez, 119 F.Supp. 429 (D.N.Mex. 1954). This Court does not have jurisdiction under Title 28 U.S.C. § 1343(1).

IV. Title 28 U.S.C. § 1331 confers original jurisdiction on the district courts for actions arising under the Constitution, laws or treaties of the United States where the matter in controversy exceeds in value the sum of ten thousand dollars.

■ The jurisdictional amount requisite to the commencement of an action under Title 28 U.S.C. § 1331 must exist with respect to each plaintiff's claim for relief against each defendant. Where plaintiffs seek injunctive relief, the value of the matter in controversy is the value of the right to be protected. Each plaintiff in this case has asserted a claim for injunctive relief against each defendant, alleging a denial of numerous civil rights, the value of which is alleged to exceed ten thousand dollars. In addition, plaintiffs DNA and Mitchell have asserted a claim for monetary damages in a yet undetermined sum. The jurisdictional amount having been satisfactorily alleged, this Court has jurisdiction of the action if it is one "arising under" the Constitution, laws, or treaties of the United States.

In Cohens v. Commonwealth of Virginia, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), Chief Justice Marshall stated the rule as follows:

> "A case in law or equity * * * may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either."

See Schulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912); Littell v. Nakai, 344 F.2d 486 (9th Cir. 1965).

■ A. Plaintiffs assert that the case arises under the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment places restrictions upon State action. It could not, therefore, restrict the actions of defendant Holmes, who is an officer of the federal government. Nor could it restrict the actions of defendants Nakai and Adams, who are officers of the Navajo tribe, which is not a State within the meaning of the Fourteenth Amendment. *See* Native American Church of North America v. Navajo Tribal Coun-

cil, 272 F.2d 131 (10th Cir. 1959); Barta v. Oglala Sioux Tribe, 259 F.2d 553 (8th Cir. 1958); Glover v. United States, 219 F.Supp. 19 (D.Mont.1963).

■ B. Plaintiffs assert that the case arises under the First, Fourth, Fifth and Sixth Amendments to the United States Constitution. These provisions protect only against action taken by the United States. They are, therefore, applicable to actions taken by defendant Holmes. Plaintiffs allege that defendant Holmes acted unconstitutionally by concurring in the order of August 7, 1968, in which defendant Nakai directed defendant Adams to remove plaintiff Mitchell from the Navajo Indian Reservation. Plaintiffs allege that defendant Holmes was under an obligation to refuse to concur in the exclusion order because of the facts that were known to him. If the concurrence of defendant Holmes was necessary to effectuate the exclusionary order, and was thus the cause of the deprivation of rights secured to plaintiffs under the Bill of Rights, that action would be in excess of defendant Holmes's authority and would subject him to suit as an individual.

■ A similar problem was presented in Oliver v. Udall, 113 U.S.App.D.C. 212, 306 F.2d 819 (1962). In that case plaintiffs alleged that the action of the Secretary of the Interior in approving an ordinance of the Navajo Tribal Council prohibiting the use of Peyote on the Navajo reservation had deprived them of their First Amendment right of freedom of religion. The Court rejected that contention, finding that "the Secretary has done no more than approve action which the Navajo Tribe was entitled to take." Furthermore, the Court stated:

It is our view that the Secretary's approval of the tribal action in 1959 was entirely in keeping with that abstinence from federal intervention in the internal affairs of an Indian tribe which the law clearly requires. The Secretary had simply recognized the valid governing authority of the Tribal Council.

Plaintiffs in this case have challenged the action taken by the Navajo tribe as unlawful under the treaty between the Navajo tribe and the United States, and under Title II of the Civil Rights Act of 1968, both discussed, *infra*. On the basis of the information presently before this Court, the complaint against defendant Holmes may not be dismissed under the authority of Oliver v. Udall, *supra*. Plaintiff is entitled to present his proof with respect to the effect of the concurrence of defendant Holmes and the extent to which that action was mere recognition of the valid governing authority of the Navajo Tribal Council. Defendant Holmes may have a defense as a matter of law, but no such defense has yet been presented to this Court. Therefore, the Court concludes that plaintiffs have stated a cause of action against defendant Holmes arising under the United States Constitution.

■ Numerous cases, paying homage to the principle of quasi-sovereignty for Indian nations as established in the early decisions of Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832) and United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886), have held that provisions in the United States Constitution restricting action on the part of the United States are not binding upon Indian nations. *See, e. g.,* Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896) (Sixth Amendment right to grand jury); Native American Church of North America v. Navajo Tribal Council, *supra,* (First Amendment freedom of religion); Barta v. Oglala Sioux Tribe, *supra,* (Fifth Amendment due process); Glover v. United States, *supra* (Sixth Amendment right to counsel). In Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965), the Ninth Circuit expressed some doubt as to the continued validity of that proposition, but under the facts in that case found it unnecessary to challenge it. Rather, the Court, after reviewing the

history of tribal courts on the Fort Belknap Indian Reservation, concluded:

"[T]hese courts function in part as a federal agency and in part as a tribal agency, and that consequently it is competent for a federal court in a habeas corpus proceeding to inquire into the legality of the detention of an Indian pursuant to an order of an Indian court. We confine our decision to the courts of the Fort Belknap reservation. The history of other Indian courts may call for a different ruling, a question which is not before us." (342 F.2d 369, 379)

Plaintiffs assert that *Colliflower* alters the principles set forth in the numerous cases cited *supra*. But this Court is not inclined to view *Colliflower* as conferring upon this Court jurisdiction in this case to review the legality of the conduct of defendants Nakai and Adams under the Bill of Rights. First, *Colliflower* did not purport to be inconsistent with the numerous cases cited *supra*. Rather, the Court carefully distinguished those cases from the habeas corpus case before it for decision. 342 F.2d 369, 378. Second, *Colliflower* would be analogous to this case only if this Court were able to determine that the Advisory Committee of the Navajo Tribal Council, the executive committee of the legislative branch of the Navajo tribal government, "functioned in part as a federal agency." But the establishment of that proposition would not merely act as an inroad on Navajo tribal sovereignty, it would end it. In the face of those decisions holding that the internal and social affairs of the Navajo tribe were exclusively within the jurisdiction of whatever tribal government existed, subject only to action on the part of Congress, this Court declines to now decide that these affairs have always been subject to adjudication in this Court as controversies arising under the Constitution of the United States. *See* Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Littel v. Nakai, *supra;* Native American Church of North America v. Navajo Tribal Council, *supra*. Therefore, with respect to defendants Nakai and Adams, plaintiffs have failed to state a claim arising under the Constitution of the United States.

▇▇▇ C. Plaintiffs assert that the case arises under the treaties between the Navajo tribe and the United States. With respect to plaintiff Mitchell, this assertion has merit. The defendants claim that the Navajo tribe, under the treaty, possesses the authority to exclude non-Navajos from the Navajo reservation for any reason it pleases. Mitchell disagrees, claiming that the tribe acted in excess of its powers under the treaty. This Court has jurisdiction to adjudicate the claim of plaintiff Mitchell within the limited framework of treaty interpretation. The merits of that claim may or may not be clear cut, but the existence of the claim is enough to deny a motion to dismiss for lack of jurisdiction.

D. Plaintiffs assert that the case arises under Title I and Title II of the Civil Rights Act of 1968.

▇▇▇ (1) Title I of the Civil Rights Act of 1968, Title 18 U.S.C. § 245, is a criminal statute making unlawful certain forms of interference with federally protected activities. Other civil rights statutes of a criminal nature have been held not to create a civil cause of action. *See* Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1956); Sinchak v. Parente, 262 F.Supp. 79 (W.D.Pa.1966) (both cases involving Title 18 U.S.C. §§ 241, 242). The justification for such a holding is substantially stronger in this case in view of the restraints placed by Congress on the invocation of Title 18 U.S.C. § 245, which may be invoked by the United States only upon certification in writing by the Attorney General or Deputy Attorney General that a prosecution is justified in the public interest. Therefore, this Court does not have jurisdiction of this action by virtue of Title I of the Civil Rights Act of 1968.

(2) Title II of the Civil Rights Act of 1968 provides in part:

"Sec. 202. No Indian tribe in exercising powers of self-government shall—

(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;

\* \* \* \* \* \*

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;

(9) pass any bill of attainder or ex post facto law \* \* \*."

Section 201 of Title II defines powers of self-government as "all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses." The legislative history of Title II indicates a clear intent on the part of Congress to make substantial changes in the manner in which Indian tribes could exercise their quasi-sovereign powers. This was the prerogative of Congress, and its powers to make such changes cannot be disputed. *See* Williams v. Lee, *supra;* Colliflower v. Garland, *supra.*

Defendants contend that it was the intent of Congress in enacting Title II to protect only the rights of Indians in their relationships with tribal governments, and that plaintiff Mitchell, a non-Indian, is not entitled to invoke the protection provided by that legislation. Defendants contend that the term "any person," where it appears in Title II, should be interpreted as meaning "any American Indian." The legislative history of Title II does not provide this Court with a justifiable reason for so restricting the plain language of the statute.

Initially, legislation was proposed that imposed upon Indian tribes the same limitations and restraints as those which are imposed on the federal government by the United States Constitution. Objections to this whole scale application of the Bill of Rights to Indian tribes were voiced in hearings conducted in June, 1965. The Department of the Interior offered a substitute bill that spelled out in specific terms the rights Indians would possess in their relationships with tribal governments. The substitute bill specifically referred to "American Indians" in delineating the rights to be established. *See* Hearings on the Constitutional Rights of American Indians Before the Senate Subcommittee on Constitutional Rights of the Committee on the Judiciary, 89th Cong., 1st Sess., at 5, 317–18 (1965). In May, 1966, the Department of the Interior submitted supplemental testimony and a revision of the substitute bill that was intended to establish rights for all persons who may be subject to the jurisdiction of tribal governments, whether Indians or non-Indians. *See* Summary Report on the Constitutional Rights of American Indians of the Senate Subcommittee on Constitutional Rights of the Committee on the Judiciary, 89th Cong., 2d Sess., at 9–10 (1966). At this point, along with immaterial changes, the term "any person" was substituted for the term "American Indian" throughout the bill that eventually became Title II. That language remained in the bill up to and including the time of its enactment into law.

Defendants point to numerous expressions of Congressional concern with the rights of Indians; indeed, the legislative history of this legislation is replete with passages expressing concern for those rights. But the defendants point to no language that indicates that Congress was concerned only with the rights of Indians to the exclusion of concern for the rights of others. In fact, the hearings on this legislation contain a number of references to instances in which the rights of non-Indians were impaired by tribal governments. *See,* Hearings, *supra,* at 189, 260–67. One judicial decision creating concern on the

part of Senate subcommittee involved the rights of non-Indians. Barta v. Oglala Sioux Tribe, *supra*. Therefore, plaintiff Mitchell may invoke the provisions of Title II of the Civil Rights Act of 1968.

 Because plaintiffs in this case assert rights purportedly guaranteed to them by Title II of the Civil Rights Act of 1968, this action is one arising under the laws of the United States, and this Court has jurisdiction under Title 28 U.S.C. § 1331. In addition, under Title 28 U.S.C. § 1343(4), this Court has original jurisdiction over "any civil action authorized by law to be commenced by any person * * * under any Act of Congress providing for the protection of civil rights." In Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), plaintiffs established jurisdiction in the district court under Title 28 U.S.C. § 1343(4), seeking to vindicate their rights under Title 42 U.S.C. § 1982, a statute which by its terms does not authorize the filing of a civil action, but is merely declarative of the rights of citizens of the United States. The Supreme Court stated:

> "The fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from fashioning an effective equitable remedy." 88 S.Ct. at 2189–2190 n. 13.

 V. In this case, plaintiffs assert jurisdiction under Title 28 U.S.C. § 1343(4), seeking to vindicate rights under Title II of the Civil Rights Act of 1968, a statute which by its terms does not authorize the filing of a civil action, but is merely declarative of the rights of persons subject to the jurisdiction of an Indian tribal government. It appears, therefore, that this Court has jurisdiction of this action under both Title 28 U.S.C. § 1331 and § 1343(4), the latter provisions permitting suit without regard to jurisdictional amount. *See* Jones v. Alfred H. Mayer Co., *supra*, at 2189 n. 1.

 Defendants assert that the questions presented in this action are "political questions" of a sort that would require this Court to dismiss the complaint. While the questions presented may be difficult ones, they are not the type of question that would permit dismissal of the complaint on the "political question" ground.

 The fact that this Court has jurisdiction of the action under Title II of the Civil Rights Act of 1968 does not force the conclusion that plaintiffs are entitled to relief under that statute in this Court. Plaintiffs admitted upon oral argument of the motion to dismiss that they have never presented their claims for relief to the Navajo Tribal Court. The question arises whether an implied condition to invocation of Title II in this Court is a demonstration that plaintiffs have exhausted remedies available to them within the existing tribal government framework.

Several factors support the implication of such a condition into Title II. First, this interpretation would reconcile the statute with "a strong Congressional policy to vest Navajo Tribal Government with responsibility for their own affairs." Littel v. Nakai, *supra*. Second, this interpretation would place primary responsibility for the vindication of rights violated by Indian governmental agencies upon the tribal courts. Such responsibility may well enhance the development of an independent Indian judiciary, thus reconciling the statute with recognized federal policy. *See* Williams v. Lee, *supra* 358 U.S. at 222, 79 S.Ct. 269. Third, this interpretation would insure that this Court would intervene only in those instances in which local conflicts cannot be resolved locally. While the case before this Court is somewhat spectacular in its allegations, the rule to be established will affect all future cases brought before this Court. No doubt many of these cases could be resolved locally.

Several factors, however, militate against the implication of a condition of

exhaustion into Title II. First, not all the defendants in this action are amenable to suit in the Navajo Tribal Court; defendants Holmes and Adams are non-Indians and, as such, would not be proper parties in a tribal court. Second, the legislative history of Title II indicates that Congress was greatly concerned, not only with establishing rights for persons subject to the jurisdiction of Indian tribes, but with providing effective remedies for infringement of those rights. Thus, Congress was greatly concerned with judicial decisions dismissing civil actions in the district court where persons sought redress for infringement of civil rights. Finally, establishing a condition of exhaustion in all cases would result in a multiplicity of lawsuits. Defendants Nakai and Adams would be entitled to dismissal insofar as the complaint relied upon Title II, but they would remain amenable to action in this Court insofar as the complaint relies upon the treaty with the Navajo tribe. Defendant Holmes would remain liable to action on all grounds applicable to him. Should the Navajo Tribal Court decide in favor of defendants Nakai and Adams, plaintiffs would be entitled to return to this Court to relitigate the matter. Since the claims against all defendants involve essentially the same factual allegations, this Court would either have to postpone the trial on the issues properly before it, or hear much of the same evidence twice.

Upon consideration of all these factors, the Court holds that the claims against defendants Nakai and Adams under Title II of the Civil Rights Act of 1968 are properly before this Court despite the failure of plaintiffs to seek redress in the Navajo Tribal Court. This holding is based upon the policies giving rise to the concept of pendent jurisdiction, whereby state court claims properly joined with a federal claim are cognizable in the federal court. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In short, while under other circumstances this Court would require plaintiffs to exhaust remedies available within tribal government framework, the proper utilization of the resources of the federal courts require that this Court hear all plaintiffs' claims in one action.

This opinion is written in an effort to reveal some of the problems concerning the jurisdiction of the federal courts inherent in the Civil Rights Act of 1968 and the extent to which that statute requires this Court to depart from long established principles and policies.

Defendants' motion to dismiss is denied.