**DRY CREEK LODGE, INC., a Wyoming Corporation, et al., Plaintiffs-Appellants,**

v.

**The UNITED STATES of America et al., Defendants-Appellees.**

No. 74-1546.

United States Court of Appeals, Tenth Circuit.

Argued March 28, 1975.

Decided May 9, 1975.

---

G. L. Spence, Casper, Wyo. (John R. Hursh, Hamilton & Hursh, P. C., Riverton, Wyo., on the brief), for plaintiffs-appellants.

Marvin J. Sonosky, Washington, D. C. (Glen A. Wilkinson, Washington, D. C. and William J. Thomson, II, Cheyenne, Wyo., on the brief), for non-federal defendants-appellees.

Larry A. Boggs, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., Richard V. Thomas, U. S. Atty., Cheyenne, Wyo., and George R. Hyde, Atty., Dept. of Justice, Washington, D. C., on the brief), for federal defendants-appellees.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The primary question in this case is whether the trial court had subject matter jurisdiction. Following a hearing in which a preliminary injunction was sought and at which motions for dismissal and for summary judgment were filed on behalf of the federal defendants and the non-federal defendants, respectively, the court not only ruled that there was no jurisdiction but also ruled that there was no case on the merits. Some evidence was adduced and thus there was somewhat of a summary trial held at a preliminary stage of the proceedings.

This is an unusual case. The plaintiff claims a right of access to his property, on which he had built an inn or hotel (a

stopping off place for persons entering wilderness areas), from the main road on a three and one-half mile dirt road which crosses Indian properties held in trust by the United States for the benefit of individual Indians and the Shoshone and Arapahoe tribes. Appellants had never owned a right-of-way, but had been until the present allowed free use of the dirt road in question by permission of the six members of the Bonatsie family, who are members of the Shoshone tribe, and the other landowners.

The events which brought about the crisis leading to the lawsuit started in early 1974 when appellants built a small lodge having dining and drinking facilities on their property. This lodge was financed in part at least by the United States Small Business Administration. Its representatives had expressed some interest in the fact that there was not as a matter of right an access to the lodge. Counsel for appellants assured the SBA that this was no problem. The superintendent of the Wind River Indian Reservation testified that he advised the appellants that it would be necessary for them to obtain a formal right-of-way from the Bonatsies in order to have a right of egress and ingress. Notwithstanding the right-of-way problem, the lodge was completed, but on the day of the formal opening the members of the Bonatsie family together with the Joint Business Council of the tribes plus the superintendent of the Reservation erected a barricade across the road and stopped traffic in both directions. It is undisputed that employees of the Bureau of Indian Affairs aided in manning the barricade.

All of the foregoing led to the filing of the instant lawsuit in the United States District Court for the District of Wyoming. Named as defendants were the Secretary of the Interior, the area director of the Bureau of Indian Affairs, the superintendent of the Reservation, a special agent of the Reservation, the Indian tribes together with the Joint Business Council of the tribes and its individual members, plus the Bonatsie family.

Originally the court issued an ex parte restraining order as a result of which the barricade was removed. This order was entered May 21, 1974. On June 3 the non-federal defendants moved for summary judgment and the federal defendants moved to dismiss. Both movants raised the alleged lack of jurisdiction. On June 4, 1974, the plaintiffs moved for a preliminary injunction, and on June 7, 1974, a hearing was held on this motion, but prior to this an amended complaint had been filed which set forth the plaintiffs' contentions as to jurisdiction in some detail. At the June 7, 1974 hearing the plaintiffs maintained that the only issue before the court was the plaintiffs' request for a preliminary injunction together with the question as to the jurisdiction of the court to entertain the cause and motion. Counsel for appellants objected to any hearing on the merits. At the conclusion of the proceedings the parties agreed that they would maintain the status quo until the court ruled. The judgment of the court which was entered on July 11, 1974 denied the application for permanent injunction and denied also the claim seeking a declaratory judgment. The court retained jurisdiction so as to allow the plaintiffs to exhaust their remedies with the tribe and the Department of the Interior. However, without further notice the court proceeded to dismiss the cause of action on July 29, 1974. It is the propriety of these actions which we must review.

Plaintiffs contend:

1. The court erred in considering the merits and also its jurisdiction over the case without giving notice of intent to hear the merits in accordance with the Rules of Civil Procedure.

2. They maintain that it was error to issue what amounted to a summary judgment without giving the requisite notice provided in Rule 56(c) of the Federal Rules of Civil Procedure.

3. They also contend that the court was in error in holding that it lacked jurisdiction and in denying the motion for preliminary injunction.

## I.

Inasmuch as it appears from the record that the concern of the district court was with the question of jurisdiction to accept the cause and that this consideration affected, indeed governed, the rulings on the merits, it would seem to be proper first to inquire as to whether jurisdiction existed.

The complaint insofar as the United States and its agents are concerned alleges that the court had jurisdiction pursuant to 28 U.S.C. § 1331 to adjudicate their claims for a way of necessity and to issue a quiet title decree against the United States and the Indians as well, including the administrator of the estate of Ed Bonatsie.

**A. Could the United States be a party?**

■ At the outset we conclude that the trial court was correct in dismissing the claims as to the United States, because it had neither expressly nor impliedly consented to the suit.[1] The plaintiffs, however, allege that a consent was given (a waiver of immunity) as a result of enactment of 25 U.S.C. § 357, which in general provides that lands allotted to Indians may be condemned for any public purpose under the laws of the State or Territory where the land is located. Plaintiffs also point to a companion Wyoming statute which allows one who has no outlet to a public road to obtain a private road through the Board of County Commissioners of his county. But we fail to see that either the federal statute or the Wyoming statute (Wyoming Stat. Ann. § 24–92) creates the necessary waiver of sovereign immunity. If it could be said that there was a waiver contained in § 357, *supra*, it would extend only to condemnations for public purpose. The Wyoming statute applies only to condemnations for private purpose. The law is well settled that waiver of sovereign immunity is to be strictly construed, and it is plain that Congress did not give its consent to suits against it by private individuals seeking private roads.

**B. Immunity of the individual government officers.**

■ It is contended that the defendants Rogers Morton, James Cannon, Clyde Hobbs and Archie W. Keep are also immune from suit because they were performing their functions as officers of the United States.[2] If the action against the officers was based only on their failure to provide or extend a way of necessity, the immunity would have to be upheld as to them as well as the government.

■ The question is, however, whether the sovereign immunity which belongs to the government extends to the officers on these facts. Federal jurisdiction does extend to federal officials even in the absence of a consent when they have acted beyond their statutory authority or where they have acted in an unconstitutional manner. The complaint herein alleges that the officers acted without authority or justification in maintaining the barricade. From the allegations of the complaint and the surrounding facts, it appears that the federal officers manned the barricades with the tribal councils and encouraged the latter to block access to plaintiffs' property. It is also alleged that the federal agents along with the other defendants conspired to deprive the plaintiffs of their civil rights in violation of 42 U.S.C.

1. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372 (1933).

2. *See* Dugan v. Rank, *supra*; Malone v. Bowdoin, *supra*; Larson v. Domestic & Foreign Corp., *supra*; National Indian Youth Council v. Bruce, 485 F.2d 97 (10th Cir. 1973); McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971); Chournos v. United States, 335 F.2d 918 (10th Cir. 1964).

§§ 1983 and 1985 and that their rights are subject to vindication under 28 U.S.C. § 1343.

■ The trial court correctly ruled that the claim under § 1983 lacks merit because there is no showing that the defendants acted under color of state law, an essential requirement of the § 1983 suit. The court's dismissal of the § 1983 action was then correct.[3]

■ But this does not end the matter. There is a further contention that the court erred in dismissing plaintiffs' claim that the individual defendants other than the Secretary of the Interior conspired to deprive them of equal protection or equal privileges and immunities contrary to 42 U.S.C. § 1985. Here the presence or absence of state action is not a factor, for this provision embraces private conspiracies. See Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The plaintiffs' theory revealed in the complaint and at the hearing was that the blockade's purpose was deprivation of equal protection of the laws and of due process, and the plaintiffs maintain that they belong to a class which was the object of discrimination. The complaint also alleged that the blockade sought to block ingress and egress of all persons, but this does not serve to dispose of the allegation that discrimination existed. It is true that the complaint does not detail the factual basis for this claim, but under the Rules of Civil Procedure detailed *evidence* need not be set forth in the complaint. *Cf.* Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

In holding that the court must entertain this claim we do not, of course, evaluate its merits. Inasmuch as there has not been a full-scale trial, the merits of the question are wide open and are to be determined from the evidence presented at a trial following discovery and other pretrial proceedings.

## II.

A further ground for federal court jurisdiction advanced by plaintiffs is the constitutional tort doctrine enunciated in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This was an aggravated search and seizure case in which federal agents invaded the plaintiffs' home by mistake and under color of authority as federal agents and conducted a narcotics search. Acting without a warrant, the officers entered and searched plaintiff's home. Arrest of the plaintiff was made and there was a threat to arrest the entire family. In the civil action against the agents the Fourth Amendment was invoked in the absence of a federal civil rights act. The district court dismissed the case on the ground that it did not state a cause of action. The court of appeals affirmed and the Supreme Court reversed. The question presented was whether the action could be entertained under the Fourth Amendment. The Court held that where rights under the Fourth Amendment have been violated "the courts will be alert to adjust their remedies so as to grant the necessary relief." The prior definitive case was the Supreme Court's decision in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). This was also a search and imprisonment case which alleged violation of federally protected constitutional rights. *Bell* was a pioneer decision which, although reserving the merits issue, recognized the power of the courts to entertain such a case and to fashion a remedy where it has not been provided by Congress. A necessity existed to redress injuries inflicted by federal officers contrary to the Constitution.

■ For our purpose the Bell v. Hood case and *Bivens* also recognize that the federal jurisdiction requirement is satisfied by allegations in the complaint, even

---

**3.** *See* Native American Church v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959); Williams v. Sisseton-Wahpeton Sioux Tribal Council, 387 F.Supp. 1194 (D.S.Dak.1975); Loncassion v. Leekity, 334 F.Supp. 370 (D.N. Mex.1971); Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz.1968); Toledo v. Pueblo de Jemez, 119 F.Supp. 429 (D.N.Mex.1954).

though not specific, which describe the violation of constitutional rights.[4]

Unless, then, it can be said that the allegations in the case at bar are patently insubstantial and frivolous, the plaintiffs are entitled to proceed beyond the threshold of the court and have their case heard on its merits. It cannot be said from a reading of the allegations of the complaint that plaintiffs' claim is wholly insubstantial and frivolous. We are cognizant of the fact that the claim at bar differs from those which were litigated in Bell v. Hood and in *Bivens*, but those decisions did not limit a constitutional action to a Fourth Amendment violation, and indeed the courts which have considered claims deriving from other violations of the Constitution have applied the doctrine in other areas.[5]

We hasten to add that we do not judge either the sufficiency of the complaint or the case's intrinsic merits. We do hold that the allegations sufficiently allege the existence of federal jurisdiction entitling the plaintiffs to have their day in court.

## III.

The final question is whether the court erred in dismissing plaintiffs' claims against the tribes, the Joint Business Council and its agents. The contention is that there was jurisdiction under 25 U.S.C. § 1302, the Indian Civil Rights Act, which in pertinent part reads:

No Indian tribe in exercising powers of self-government shall— . . .

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty

---

4. On the question of jurisdiction the Supreme Court through Justice Black distinguished between a decision on jurisdiction and one on the merits as follows:

Though the mere failure to set out the federal or Constitutional claims as specifically as petitioners have done would not always be conclusive against the party bringing the suit, where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit. Thus allegations far less specific than the ones in the complaint before us have been held adequate to show that the matter in controversy arose under the Constitution of the United States. Wiley v. Sinkler, 179 U.S. 58, 64, 65, 21 S.Ct. 17, 20, 45 L.Ed. 84; Swafford v. Templeton, 185 U.S. 487, 491, 492, 22 S.Ct. 783, 784, 785, 46 L.Ed. 1005. The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a

question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. Swafford v. Templeton, 185 U.S. 487, 493, 494, 22 S.Ct. 783, 785, 786, 46 L.Ed. 1005; Binderup v. Pathe Exchange, 263 U.S. 291, 305–308, 44 S.Ct. 96, 98–99, 68 L.Ed. 308. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. The accuracy of calling these dismissals jurisdictional has been questioned. The Fair v. Kohler Die & Specialty Co., supra, 228 U.S. at page 25, 33 S.Ct. at page 411, 57 L.Ed. 716. But cf. Swafford v. Templeton, supra.

327 U.S. at 681, 682, 66 S.Ct. at 775.

5. There are some decisions which recognize the existence of a civil action to redress the violation of federal rights other than under the Fourth Amendment. *See, for example,* United States ex rel. Moore v. Koelzer, 457 F.2d 892 (3d Cir. 1972); Howard v. Warden, Petersburg Reformatory, 348 F.Supp. 1204 (E.D.Va.1972). *But see* Moore v. Schlesinger, 384 F.Supp. 163 (D.Colo.1974).

or property without due process of law.

The complaint seeks injunctive relief against the tribes and the Tribal Councils from interfering by blockading the road and thus preventing the plaintiffs from making use of the connecting road. Appellants say that this violates their rights under the due process and equal protection clauses of the Act. Section 1302, *supra,* does not by its terms extend to the district court's jurisdiction over claims arising under this provision. However, the courts which have considered the question have held that 28 U.S.C. § 1343(4) provides a remedy in federal court for the prosecution of these deprivations.[6]

Our court has had this general question before it on three occasions, but has not reached the present issue. Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir. 1971) and Groundhog v. Keeler, 442 F.2d 674 (10th Cir. 1971). It was held in *Groundhog* that there were insufficient jurisdictional facts to bring the

case within the provisions of § 1302. In McCurdy v. Steele, 506 F.2d 653 (10th Cir. 1974), this court refrained from ruling on the applicability of § 1302 because the plaintiffs had not exhausted tribal remedies.[7]

From an examination of the authorities, we are of the opinion that 25 U.S.C. § 1302, which recognizes the right to be protected against deprivation of due process and equal protection of the laws, furnishes a jurisdictional basis which justifies the federal court's entertaining of the case. The plaintiffs are non-Indians and so there remains the question whether an action under the Indian Bill of Rights contemplates an action by one who is not an Indian. There is little law on this subject. The cases that have considered § 1302 have held that in view of the legislative history, it applies to non-Indians as well as Indians who are under the jurisdiction of the tribe.

A district court case from Arizona, Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz.

---

6. Crowe v. Eastern Band of Cherokee Indians, Inc., 506 F.2d 1231 (4th Cir. 1974); Thompson v. Tonasket, 487 F.2d 316 (9th Cir. 1973), cert. denied, 416 U.S. 954, 94 S.Ct. 1967, 40 L.Ed.2d 304 (1974); Brown v. United States, 486 F.2d 658 (8th Cir. 1973); Johnson v. Lower Elwha Tribal Community, 484 F.2d 200 (9th Cir. 1973); Daly v. United States, 483 F.2d 700 (8th Cir. 1973); Melvin White Eagle v. Philomene One Feather, 478 F.2d 1311 (8th Cir. 1973); Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972); Williams v. Sisseton-Wahpeton Sioux Tribal Council, 387 F.Supp. 1194 (D.S.Dak.1975); White v. Tribal Council, Red Lake Band of Chippewa Indians, 383 F.Supp. 810 (D.Minn.1974); Means v. Wilson, 383 F.Supp. 378 (D.S.Dak. 1974); Hickey v. Crow Creek Housing Auth., 379 F.Supp. 1002 (D.S.Dak.1974); McCurdy v. Steele, 353 F.Supp. 629 (D.Utah 1973), rev'd on other grounds, 506 F.2d 653 (10th Cir. 1974); Seneca Constitutional Rights Organization v. George, 348 F.Supp. 48 (W.D.N.Y. 1972); Solomon v. LaRose, 335 F.Supp. 715 (D.Neb.1971); Loncassion v. Leekity, 334 F.Supp. 370 (D.N.Mex.1971); Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85 (D.Mont.1969). *But see* Pinnow v. Shoshone Tribal Council, 314 F.Supp. 1157 (D.Wyo.1970), aff'd on other grounds sub nom. Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir. 1971). *Cf.*

Yellow Bird v. Oglala Sioux Tribe of South Dakota, 380 F.Supp. 438 (D.S.Dak.1974); Lefthand v. Crow Tribal Council, 329 F.Supp. 738 (D.Mont.1971).

7. In the present case a decision on the question is unavoidable, because of its procedural posture. Since only three days notice was given to the plaintiffs that the defendants were seeking dismissal at the preliminary injunction hearing, the only issue properly before the trial court was its subject matter jurisdiction. The defendants raised the issue of exhaustion of administrative remedies at the hearing and the court ruled that the plaintiffs had failed to exhaust. However, the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" does not go to the subject matter jurisdiction of the court. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *see* McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); 3 K. Davis, Administrative Law Treatise § 20.02. It is clear from the transcript of the preliminary injunction hearing that plaintiffs' counsel was not prepared to argue the exhaustion point. Fairness requires that he be given that opportunity.

1968), involved a non-Indian plaintiff's rights against the tribal council. The court held that it had jurisdiction over the controversy between the non-Indian against the tribal council.

In Hickey v. Crow Creek Housing Authority, 379 F.Supp. 1002 (D.S.Dak.1974), a non-Indian had entered into a contract with the tribal housing authority to drill three wells. In an action under the Indian Civil Rights Act, it was alleged that he had been deprived of due process. The court recognized § 1302 to be available to non-Indians as well as Indians, but it further held that the complaint failed to state sufficient facts to give the court jurisdiction under 28 U.S.C. § 1343(4).

An Eighth Circuit decision contains a dictum which says that § 1302 applies to any person within tribal jurisdiction. Schantz v. White Lightning, 502 F.2d 67, 70 n.5 (8th Cir. 1974). The legislative history which has been referred to is discussed fully in the opinion of Judge Craig in Dodge v. Nakai, *supra*. The court there concluded that Congress intended § 1302 to apply to all persons.[8] It is indeed difficult to reach any other conclusion since by its terms it extends to all persons.

■ The allegations of the complaint are to the effect that plaintiffs have a property right in the access road and that the part of the road which was blocked was within tribal jurisdiction. It was also alleged that the tribe summoned the federal agents to maintain and supervise the barricade of that road, and that this constituted a violation of the Indian Civil Rights Act. We recognize that this may not be the strongest case imaginable under the Indian Civil Rights Act, but determining the merits is not our function. We are, however, of the opinion that the allegations are sufficient to give the court jurisdiction to hear the merits and we say that it should be a regular trial and not a summary hearing.

■ We have not failed to consider the contention of the tribes and the Joint Council that they are protected from suit by the doctrine of tribal immunity, but the cases which have considered § 1302 have held that this enactment is a waiver by Congress of this immunity.[9]

■ From the fact that the lower court had jurisdiction over the tribes and the Joint Business Council, it does not follow that it had jurisdiction over the

---

**8.** Initially, legislation was proposed that imposed upon Indian tribes the same limitations and restraints as those which are imposed on the federal government by the United States Constitution. Objections to this whole scale application of the Bill of Rights to Indian tribes were voiced in hearings conducted in June, 1965. The Department of the Interior offered a substitute bill that spelled out in specific terms the rights Indians would possess in their relationships with tribal governments. The substitute bill specifically referred to "American Indians" in delineating the rights to be established. *See* Hearings on the Constitutional Rights of American Indians Before the Senate Subcommittee on Constitutional Rights of the Committee on the Judiciary, 89th Cong., 1st Sess., at 5, 317–18 (1965). In May, 1966, the Department of the Interior submitted supplemental testimony and a revision of the substitute bill that was intended to establish rights for all persons who may be subject to the jurisdiction of tribal governments, whether Indians or non-Indians. *See* Summary Report on the Constitutional Rights of

American Indians of the Senate Subcommittee on Constitutional Rights of the Committee on the Judiciary, 89th Cong., 2d Sess., at 9–10 (1966). At this point, along with immaterial changes, the term "any person" was substituted for the term "American Indian" throughout the bill that eventually became Title II. That language remained in the bill up to and including the time of its enactment into law.
Dodge v. Nakai, *supra*, at 24.

**9.** *See* Brown v. United States, 486 F.2d 658 (8th Cir. 1973); Johnson v. Lower Elwha Tribal Community, 484 F.2d 200 (9th Cir. 1973); Daly v. United States, 483 F.2d 700 (8th Cir. 1973); McCurdy v. Steele, 353 F.Supp. 629 (D.Utah 1973); Seneca Constitutional Rights Organization v. George, 348 F.Supp. 48 (W.D.N.Y.1972); Loncassion v. Leekity, 334 F.Supp. 370 (D.N.Mex.1971). *But see* Pinnow v. Shoshone Tribal Council, 314 F.Supp. 1157 (D.Wyo.1970), aff'd on other grounds sub nom. Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir. 1971).

individual members of the tribes and the Council or over the individual federal agents. Section 1302 speaks only to tribe action, and it has been held that it does not give rise to jurisdiction under 28 U.S.C. § 1343 over individual tribal members.[10] Thus, the trial court did not err in holding that it lacked jurisdiction to award damages or declaratory relief against the individual defendants. Of course, to the extent that individuals are acting as agents for the tribes or the Council, the court does possess jurisdiction to extend injunctive relief to the individual agents.[11]

### IV..

■ Where, as here, jurisdiction of the court is invoked by plaintiffs on grounds which if true spell out the existence of federal jurisdiction, the cause must be entertained for the purpose of fully determining the merits either by way of motion or by trial. *See* Bell v. Hood, *supra*, and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, *supra*. *See also* Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).[12]

As has been demonstrated above, the amended complaint sufficiently invoked the jurisdiction of the federal court, whereby the court was required to deal with the claims asserted on their merits. The fact that it appeared to the trial court that the cause as a whole lacked merit did not justify the procedures which were taken.

■ As we view it, the hearing on preliminary injunction became a hearing on the merits. This was done without notice pursuant to Rule 65(a)(2) and without giving the requisite 10 days notice required by Rule 56(c), Federal Rules of Civil Procedure. We concede that if a case had been wholly found lacking in procedural basis so as to justify dismissal as being frivolous, this summary disposition might have been permissible, but as we have shown above, such an out of hand disposition was not appropriate at bar.

10. *See* Means v. Wilson, 383 F.Supp. 378 (D.S. Dak.1974); Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85 (D.Mont.1969); Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz.1968).

11. The plaintiffs assert as an additional basis for jurisdiction over the defendants 28 U.S.C. § 1353. However, this Circuit has previously held that § 1353 was enacted for the narrow purpose of giving district courts jurisdiction over claims of right to original allotments or allotments in the first instance. *See* Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963). This is not such a case.

12. In this case the opinion of the Court was by Justice Douglas. The plaintiff had been subpoenaed before the House Un-American Activities Committee. These subpoenas had been issued in blank and the agent had filled in the plaintiff's name. The suit was brought under the Constitution just as Bell v. Hood and *Bivens*. On the issue of jurisdiction the Court simply said:

> We agree with the Court of Appeals in its first opinion (280 F.2d 293) that on the face of the complaint the federal court had jurisdiction. As we stated in Bell v. Hood, 327 U.S. 678, 685, 66 S.Ct. 773, 777, 90 L.Ed. 939, "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction." And see Bock v. Perkins, 139 U.S. 628, 630, 11 S.Ct. 677, 678, 35 L.Ed. 314.

> But on the undisputed facts, as they appear on argument of the case, no federal cause of action can be made out. Dawson's main reliance is on the Fourth Amendment, which protects a person against unreasonable searches and seizures. Its violation, he contends, occurred when an unauthorized subpoena was served on him. But there was neither a search nor a seizure of him. He was neither arrested nor detained pursuant to any subpoena; nor, so far as the complaint discloses, did he respond to the subpoena and either testify or refuse to testify; nor was the subpoena used to cite him for contempt. *Cf.* Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774. In short, the facts alleged do not establish a violation of the Fourth Amendment. And the provisions of the Civil Rights Act are clearly inapplicable to this kind of case. *See* R.S. §§ 1979, 1980, 42 U.S.C. §§ 1983, 1985; Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

373 U.S. at 649, 83 S.Ct. at 1444.

■ Moreover, notice is an essential prerequisite to an order to change a hearing on a preliminary injunction to a hearing on the merits.[13]

True, the plaintiffs received three days notice that the defendants were moving for a dismissal, but the hearing at bar was more than one on motion to dismiss. Not only was it a summary judgment issue, the court heard testimony also. The 10 day notice provision of Rule 56 alone would prohibit this.[14]

■ As to the matter of dismissal for lack of jurisdiction, we finally point out that a question like the plaintiffs' inability to sue the United States because of sovereign immunity would be appropriately dismissed on a summary basis. We must conclude that the case called for a trial or hearing on the merits, and that it was improper for the court to determine such issues as exhaustion of administrative remedies and a determination that the defendants were entitled to prevail on the merits of the claim.[15]

In sum, we conclude that the cause is not so lacking in merit as to justify a summary disposition. Discovery of the facts and full presentation thereof were essential.

Accordingly, then, the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

---

13. *See* S. E. C. v. Pearson, 426 F.2d 1339 (10th Cir. 1970); Sooner State Dairies, Inc. v. Townley's Dairy Co., 406 F.2d 1328 (10th Cir. 1969). *See also* Pughsley v. 3750 Lake Shore Drive Cooperative Bldg., 463 F.2d 1055 (7th Cir. 1972); Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1106 (5th Cir. 1972); Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12 (2d Cir. 1971); T. M. T. Trailer Ferry, Inc. v. Union de Tronquistas de Puerto Rico, Local 901, 453 F.2d 1171 (1st Cir. 1971); Brooks v. Nacrelli, 415 F.2d 272 (3d Cir. 1969); 7 J. Moore, Moore's Federal Practice ¶ 65.04[4] at 65–67 (1972); 11 C. Wright and A. Miller, Federal Practice and Procedure § 2950 at 486 (1973).

Some courts have allowed consolidation without notice in special circumstances. *See* Bright v. Nunn, 448 F.2d 245 (6th Cir. 1971); Singleton v. Anson County Bd. of Educ., 387 F.2d 349 (4th Cir. 1967); Williamson·v. Hampton Management Co., 339 F.Supp. 1146 (N.D.

Ill.1972); 11 C. Wright & A. Miller, *supra*, § 2950 at 490–91.

14. *See* Adams v. Campbell County School Dist., 483 F.2d 1351 (10th Cir. 1973); Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 480 F.2d 607 (10th Cir. 1973); Santiago v. Corporacion de Renovacion Urbana, 453 F.2d 794 (1st Cir. 1972); Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co., 373 F.2d 493 (5th Cir. 1967); 10 C. Wright & A. Miller, *supra*, § 2719 at 458; 11 C. Wright & A. Miller, *supra*, § 2950 at 492.

15. In Conclusion of Law No. 4 the court found on the merits that the Cooks did not have a right of way by necessity, because other access was available. In Conclusions of Law Nos. 19 and 24 the court held that the Plaintiffs had not been deprived of equal protection of federal or tribal laws. In Conclusions of Law Nos. 8–12 the court held that the Plaintiffs had not exhausted their administrative remedies.