Argued October 20, affirmed November 24, 1975,
reconsideration denied January 7, petition
for review denied February 10, 1976

In the Matter of the Marriage of
RED FOX, *Appellant, and* RED FOX
(No. 74-2334) (CA 4640), *Respondent.*
542 P2d 918

395

John A. Hudson, Eugene, argued the cause for appellant. With him on the brief were Husband, Johnson & Fechtel, Eugene.

Dennis C. Karnopp, Bend, argued the cause for respondent. With him on the brief were Panner, Johnson, Marceau & Karnopp and C. Montee Kennedy, Bend.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

This appeal raises the single question of whether a divorce decree issued by the Tribal Court for the Confederated Tribes of the Warm Springs Reservation in Oregon was entitled to recognition by the circuit court as a bar to the maintenance of a suit for dissolution filed by appellant-husband.

On May 23, 1974 respondent-wife had filed her complaint for divorce in the Tribal Court. Three days later, while physically present on the Warm Springs Reservation, husband was personally served with a summons and complaint directing him to appear in the Tribal Court on July 23, 1974. At approximately noon on June 12, 1974 husband received a second "Notice of Action" informing him that the hearing on his wife's cause of action had been advanced and that his pres-

ence would be required at 2 p.m. on June 14.[1] He subsequently declined to appear on that date. Although husband's attorney had contacted the Chief Judge of the Tribal Court on June 13, at which time his request to appear on behalf of his client was denied,[2] the record does not show that any request for a continuance or objection to the means by which the matter had been expedited was submitted to the court. Nor were any objections made to the applicable Tribal Court hearing procedures. Finding husband to be in default, the court proceeded to issue a decree dissolving the marriage, dividing the property of the parties, and awarding custody of the minor children to wife.

■ On October 7, 1974 husband filed an amended petition[3] in the Lane County Circuit Court seeking dissolution of his marriage to wife. Wife in turn filed a plea in bar in which it was argued that the existing decree of the Tribal Court had "determined matters now at issue * * *." By way of an affirmative defense to wife's plea husband alleged in reply that the Tribal Court had no jurisdiction and its decree did not, therefore, constitute a bar to the state court proceeding. In the course of the hearing on the plea husband also argued that the Tribal Court decree was "void" because that court had denied him due process by (1)

[1] At the time her complaint was filed in the Tribal Court wife had requested a waiver of the Tribal rule providing for a delay of 60 days between the service of summons and the hearing, citing husband's "harassment" of both her and their children.

[2] Representation in Tribal Court is apparently limited by Tribal rule to individuals designated as "spokesmen."

[3] Prior to the initiation of the Tribal Court action by wife, husband had, on May 8, 1974, filed a petition for separation in the Lane County Circuit Court. A motion to quash service for failure to file a return in the husband's separation suit in state court was granted by that court on October 7, 1974. Although he now contends that the court erred in quashing service, that question is not one properly subject to review on appeal under the circumstances of this case. See State ex rel Knapp v. Sloper, 256 Or 299, 301, 473 P2d 140 (1970).

failing to afford him "reasonable notice" of its proceedings, (2) failing to afford him an opportunity to be heard, (3) refusing to allow him to be represented "by counsel or otherwise," and (4) failing to provide him with a "fair and impartial tribunal."

The circuit court held that

"* * * [husband] was accorded due process of law in the Warm Springs Tribal Court * * * a valid Decree of Dissolution of Marriage had been issued which determines the matters now at issue in this Court."

It then entered the order and decree dismissing husband's suit from which this appeal has been taken.

■ In an opinion by Mr. Chief Justice Marshall the Supreme Court held in *Worcester v. Georgia,* 31 US (6 Pet) 515, 8 L Ed 483 (1832), that Indians were in effect subjects of federal law, to the exclusion of state law, but entitled to exercise their own inherent rights of sovereignty so far as might be consistent with federal law. Felix Cohen⊕ summarized subsequent judicial decisions involving the question of tribal powers as adhering to three fundamental principles: (1) An Indian tribe possesses, in the first instance, all of the powers of any sovereign state; (2) although conquest renders the tribe subject to the legislative power of the United States and, in substance, terminates the external powers of sovereignty of the tribe, e.g., its power to enter into treaties with foreign nations, it does not, by itself, affect the internal sovereignty of the tribe, i.e., its powers of local self-government; and (3) while these powers are subject to qualification by treaties and by express legislation of Congress, except as thus expressly qualified, full powers of internal sovereignty remain vested in the Indian tribes and in their duly constituted organs of gov-

⊕ F. Cohen, Handbook of Federal Indian Law 123 (1945).

398

ernment. While the decisions of tribal courts are not, therefore, entitled to the same "full faith and credit"[5] accorded decrees rendered in sister states, the quasi-sovereign nature of the tribe does suggest that judgments rendered by tribal courts are entitled to the same deference shown decisions of foreign nations as a matter of comity.[6]

A rule of general application is that a judgment entered by a court of a foreign nation is entitled to recognition to the same extent and with as broad a scope as it has by law or usage in the courts of the jurisdiction where rendered, *if:* (1) the foreign court actually had jurisdiction over both the subject matter and the parties; (2) the decree was not obtained fraudulently; (3) the decree was rendered under a system of law reasonably assuring the requisites of an impartial administration of justice—due notice and a hear-

---

[5]

"Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial Proceedings *of every other State* * * *." (Emphasis supplied.) U.S. Constitution, Art IV, § 1.

[6]

"No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' Although the phrase has been often criticised, no satisfactory substitute has been suggested.

" 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 US 113, 163-64, 16 S Ct 139, 40 L Ed 95 (1895).

*See* Begay v. Miller, 70 Ariz 380, 222 P2d 624 (1950).

ing; and (4) the judgment did not contravene the public policy of the jurisdiction in which it is relied upon. *Hilton v. Guyot,* 159 US 113, 16 S Ct 139, 40 L Ed 95 (1895); *Goldberg v. Goldberg,* 57 Misc 2d 224, 291 NYS2d 482 (NY County Ct 1968).

■ No claim of fraud, contravention of public policy or lack of jurisdiction over the marriage or the parties is made here.⑦ Husband's position is that the Tribal Court proceeding failed to provide him with the "due process" essential as a prerequisite to the entry of a valid and enforceable judgment. Because, it is argued, the Tribal Court failed to provide either "adequate" notice or an "impartial" tribunal, or to make representation available to him, the decree entered by the court was, in fact, "void" and unavailable as a bar to the state court action.

■ While a foreign decree will not be recognized as a matter of comity where it has been obtained by means of a procedure which denies a party fundamental due process, the recognition to be accorded a foreign judgment is not necessarily affected by the fact that procedures employed by the courts of the jurisdiction in which such judgment was rendered differ in some respect from those of the courts in which the judgment is relied upon. Appellants in *Hilton v. Guyot,* supra, sought to preclude the recognition of a decree entered by a French court because in the course of the proceeding leading up to the entry of that de-

---

⑦ That an Indian tribe has the authority to regulate the domestic relations of its members—including the power to grant a divorce—has been well established. United States v. Quiver, 241 US 602, 36 S Ct 699, 60 L Ed 1196 (1916); Raymond v. Raymond, 83 F 721 (8th Cir 1897); Kalyton v. Kalyton, 45 Or 116, 74 P 491, 78 P 332 (1903), *rev'd on other grounds* McKay v. Kalyton, 204 US 458, 27 S Ct 346, 51 L Ed 566 (1907). As enrolled members of the Confederated Tribes of the Warm Springs and Fort Peck Reservations respectively, both the wife and the husband were personally subject to the jurisdiction of the Warm Springs Tribal Court.

cree a party had been permitted to testify "not under oath" and without cross-examination and because documentary evidence clearly inadmissible in the courts of the United States had been admitted. In rejecting this argument the Supreme Court concluded:

"* * * [T]he fact that the procedure [in the French court] differed from that of our own courts is [not], of itself, a sufficient ground for impeaching the foreign judgment.

"* * * * *

"It must * * * always be kept in mind that it is the paramount duty of the court, before which any suit is brought, to see to it that the parties have had a fair and impartial trial, before a final decision is rendered against either party.

"When * * * [a] foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and *opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence,* and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice * * *." (Emphasis supplied.) 159 US at 205-06.

*See also* ORS 41.360(16).

■■ Noting the general rule to be that the burden of proof falls upon one attacking the validity of a foreign judgment, we find the lack of evidence relating to two of husband's "due process" claims—the denial of representation and an impartial tribunal—to be sufficient in itself to reject them.

The suggestion that the Tribal Court was not, in

fact, "impartial" is apparently based upon the claim that an attorney retained by wife prior to the entry of the Tribal Court decree was a member of the same firm which acts as retained counsel for the Confederated Tribes of the Warm Springs Reservation. Contrary to husband's contentions, the evidence in the record before us shows that the attorney retained— or anyone else associated with the same law firm— neither actually represented wife before the court *nor* advised the court on any legal matters pertaining to the action during its pendency.

■ Similarly, while husband was advised that his retained counsel—a member of the Oregon and federal bars—would not be permitted to appear before the Tribal Court, the record shows that he was also informed that he might be represented by a "spokesman" certified to make such an appearance. The record does not indicate either that he was placed in a position different from that of any other litigant in the Tribal Court or that he was not able to secure, or was refused the opportunity to contact, an appropriately certified spokesman. Husband cites *Powell v. Alabama*, 287 US 45, 53 S Ct 55, 77 L Ed 158, 84 ALR 527 (1932), for the proposition that it is a deprivation of a constitutional right for a court to refuse to permit a party to appear through retained counsel. The obvious response here is that one is not deprived of a "right" to representation because a court will not permit a specific individual to appear before it. No constitutional claim arises from the limitation of representation to those satisfying specific qualifications where those so qualified are, in fact, available to a litigant.[9]

---

[9] Although both husband and wife have devoted much of their briefs to the question of whether the "due process" to which an Indian is entitled under the Indian Civil Rights Act—25 USC

■ Husband's final contention is that the "notice" supplied by the Tribal Court on June 12, 1974—some two' days prior to the commencement of the hearing—did not provide him with the timely notice required by fundamental due process. Prior to receiving that notice husband had, however, known for over two weeks of the pending dissolution proceeding; the court had gained jurisdiction over his person when, on May 26, 1974, he had been served with both the complaint and a summons. Additionally, while husband did contact the Tribal Court judge subsequent to receiving the notice on June 12, he neither submitted any objections to the commencement of the hearing nor requested any continuance at that time. Under these circumstances there was no deprivation of fundamental due process.

Affirmed.

---

§§ 1301-1303 (1970)—is commensurate with "constitutional" due process, resolution of that question is neither necessary nor appropriate here. A federal cause of action is available to parties alleging a deprivation of rights created by the Civil Rights Act. Crowe v. Eastern Band of Cherokee Indians, Inc., 506 F2d 1231 (4th Cir 1974); Johnson v. Lower Elwha Tribal Community, etc., Wash., 484 F2d 200 (9th Cir 1973). Indeed, we were informed at oral argument that such an "appeal" from the Tribal Court decree is now pending in the federal district court, held in suspended status awaiting the termination of this appeal.