David Joseph RED FOX, Appellant,

v.

Marcia Annett RED FOX, Confederated Tribes of the Warm Springs Reservation of Oregon, and Irene B. Wells, Appellees.

No. 76–2439.

United States Court of Appeals, Ninth Circuit.

Nov. 11, 1977.

Edward Ray Fechtel (argued), of Husband, Johnson & Fechtel, Eugene, Or., for appellant.

Owen M. Panner (argued), Bend, Or., for appellees.

Before BARNES and ELY, Circuit Judges, and VAN PELT,* District Judge.

ELY, Circuit Judge:

David Joseph Red Fox, the appellant, filed an action in the District Court alleging violations of his rights under the Indian Civil Rights Act, 25 U.S.C. § 1302(8). Upon motion by the appellees, defendants [1] in the federal suit, an order granting summary judgment against the appellant was entered. The District Court entered judgment accordingly, and the appellant appeals. We affirm.

On May 8, 1974, the appellant, who is an American Indian, filed a petition for legal separation from his wife, Marcia Annett Red Fox (hereinafter Marcia, who is one of the appellees), in an Oregon state court. Subsequently, on May 23, 1974, Marcia filed a petition for divorce in the tribal court for the Confederated Tribes of the Warm Springs Reservation of Oregon. A July 23, 1974 hearing date was set for the tribal court hearing, but on June 12, 1974, Red Fox was served with a notice that the hearing date had been advanced, *ex parte*, to June 14, 1974. He failed to appear at this hearing, and the tribal court entered a default decree of divorce against him, awarding his wife a sum of money and custody of the couple's minor children. On April 28, 1975, the Oregon state court dismissed the pending state action, holding that the tribal court decree was a bar to the state court domestic proceeding. Red Fox instituted this federal suit, seeking declaratory relief. He alleged violations of his rights to due process under the Indian Civil Rights Act, claiming improper notice of the tribal court hearing, denial of his right to counsel there, and denial of a fair and impartial tribunal. Upon his motion, the District Court action was stayed pending an appeal to the Oregon Court of Appeals. On November 24, 1975, the Oregon Court of Appeals affirmed

---

* Honorable Robert Van Pelt, Senior District Judge for the District of Nebraska, sitting by designation.

1. In the District Court, the defendants, other than the appellant's former wife, were the Con- federated Tribes of the Warm Springs Reservation and the Honorable Irene B. Wells, a tribal court judge.

the lower state court decision, holding that the tribal court decree was entitled to recognition and that the tribal court procedures had not deprived Red Fox of any "fundamental due process" of law. *In re Red Fox and Red Fox*, Or.App., 542 P.2d 918 (1975). Subsequently, the District Court granted appellees' motion for summary judgment, holding that the action was barred by the principles of *res judicata* and collateral estoppel inasmuch as the federal action necessarily involved the same issues that had been litigated and resolved against Red Fox in the Oregon courts.

Red Fox here contends that the disposition in the District Court was erroneous, arguing that the doctrines of *res judicata* and collateral estoppel were improperly applied. The principal foundation of this argument derives from the assertion that the Oregon courts did not adjudicate those claims of Red Fox that were based on the Indian Civil Rights Act, the gravamen of his complaint in the District Court. Our review of the state court proceedings leads to the conclusion that the position of Red Fox is untenable.

The Oregon Court of Appeals specifically dealt with each of the due process claims advanced by Red Fox, although it did so under the rubric of determining whether Red Fox had been accorded "fundamental due process" of law. The Oregon appellate court approached the tribal court decree from the perspective of comity. It found that while decisions of tribal courts are not entitled to the same full faith and credit accorded decrees of sister state courts, the quasi-sovereign nature of the Indian tribes requires that the judgments of their courts be accorded deference as a matter of comity. Before allowing Oregon courts to be employed as a vehicle for the recognition or enforcement of such decrees or judgments, however, the Oregon Court of Appeals announced that the tribal court decree must have been rendered in conformity with the enforcing state's principles of due process. After examining the due process analysis adopted by the Oregon Court of Appeals, we are convinced that the federal constitu-

tional due process claims of Red Fox were fully and fairly litigated in the state courts. We have recently discussed the application of *res judicata* in such a situation.

"It is now established that where the federal constitutional claim is based on the same asserted wrong as was the subject of a state action, and where the parties are the same, *res judicata* will bar the federal constitutional claim whether it was asserted in state court or not, for the reason that the state judgment on the merits serves not only to bar every claim that was raised in state court but also to preclude the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief. 'Appellant is not permitted to fragment a single cause of action and to litigate piecemeal the issues which could have been resolved in one action.'"

*Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975) (citations omitted). *Accord, Francisco Enterprises, Inc. v. Kirby*, 482 F.2d 481 (9th Cir. 1973); *Hutcherson v. Lehtin*, 485 F.2d 567 (9th Cir. 1973); *Flynn v. State Board of Chiropractic Examiners*, 418 F.2d 668 (9th Cir. 1969).

There can be little doubt that the federal action was predicated upon the same asserted wrong as was the state action. However, Red Fox argues that even though his federal due process claims may have been litigated, his due process claims under the Indian Civil Rights Act were not. Appellant supports this argument by pointing to a footnote in the opinion of the Oregon Court of Appeals.

"Although both husband and wife have devoted much of their briefs to the question of whether the 'due process' to which an Indian is entitled under the Indian Civil Rights Act—25 U.S.C. §§ 1301–1303 (1970)—is commensurate with 'constitutional' due process, resolution of that question is neither necessary nor appropriate here. A federal cause of action is available to parties alleging a deprivation of rights created by the Civil Rights Act. *Crowe v. Eastern Band of Cherokee Indi-*

*ans, Inc.,* 506 F.2d 1231 (4th Cir. 1974); *Johnson v. Lower Elwha Tribal Community, etc.,* Wash., 484 F.2d 200 (9th Cir. 1973). Indeed, we were informed at oral argument that such an 'appeal' from the Tribal Court decree is now pending in the federal district court, held in suspended status awaiting the termination of this appeal."

*In re Red Fox and Red Fox,* 542 P.2d 918, 922 n. 8 (Or.App.1975).

Nonetheless, we find that in disposing of the federal constitutional claims, the Oregon court also reached the merits of Red Fox's claims under the Indian Civil Rights Act. To hold otherwise would exalt form over substance. Because the Bill of Rights protections were not available to protect persons falling under the jurisdiction of the tribes from tribal government actions, Congress enacted the Indian Civil Rights Act in 1968. The Act substantially tracks the precise language of the Bill of Rights portion of the Constitution, thereby acting as a conduit to transmit federal constitutional protections to those individuals subject to tribal jurisdiction. Although due regard for the historical, governmental, and cultural values of the Indian tribes has resulted in some variance in the protections accorded under the Bill of Rights and the Indian Civil Rights Act, *see Tom v. Sutton,* 533 F.2d 1101, 1104–05 n. 5 (9th Cir. 1976) and cases cited therein, our court has written that the due process clauses of both documents have the same meaning.

"During oral argument, counsel for appellee urged that due process within the meaning of 25 U.S.C. § 1302 did not have the same meaning as traditional notions of due process under the Fourteenth Amendment.

There may be some provisions of the Indian Civil Rights Act that under some circumstances may have a modified meaning because of the special historical nature of particular tribal customs or organization. However, this is not one of them. The Hearings on H.R. 15419 and Related Bills Before the Subcomm. on Indian Affairs of the Comm. on Interior and Insular Affairs, 90th Cong., 2d Sess.: 'Rights of Members of Indian Tribes,' at 17 (1968), in discussing title I (now 25 U.S.C. § 1302) dealing with the denial of rights by tribal governments state that:

'. . . any Indian tribe in exercising its powers of local self-government shall, with certain exceptions, be subject to the same limitations and restraints as those which are imposed on the Government of the United States by the Constitution.'

It thus appears when the bill which was later enacted as 25 U.S.C. § 1302 was before the House Subcommittee, it was the clear intention of that body that the due process restrictions of the bill should be interpreted in the same way when applied to a tribe as when applied to the United States or to the states.

The legislative history states:

'By a unanimous vote, the subcommittee sought to extend constitutional rights to the American Indians, . .

\*　　\*　　\*　　\*　　\*　　\*

'. . . the substitute bill would grant to the American Indians enumerated constitutional rights and protection from arbitrary action in their relationship with tribal governments, . . .' 2 U.S.Code Cong. & Admin. News at p. 1864 (1968)."

*Johnson v. Lower Elwha Tribal Community, etc.,* 484 F.2d 200, 202–03 n. 4 (9th Cir. 1973).

Consequently, when the federal constitutional claims of Red Fox were examined by the Oregon appellate court in determining whether to allow Oregon's courts to be used to implement the tribal divorce decree, the due process claims under the Indian Civil Rights Act were also adjudicated.

▋ Under the guiding principles previously stated in respect to giving effect to prior state adjudications, a District Court should, as a general rule, accord such proceedings full respect. Accordingly, since the claims of Red Fox under the Act were actually litigated, the resolution by the Ore-

gon courts was *res judicata* as to both Red Fox and Marcia, the parties in the state action. Red Fox was also foreclosed from suit in the District Court against the other appellees, either on the basis that *res judicata* applies because those appellees were in privity with Marcia or because Red Fox was collaterally estopped because the issues had already been actually litigated and resolved against him. However, in view of the unique historical relationship between the American Indian and the federal government, we emphasize that a state court judgment on the merits may not invariably serve as the basis for the application of *res judicata* in a federal suit for alleged violations of the Indian Civil Rights Act. "It is federal policy, undeniable, if belated, that the Indian has a special status in our Country and that he is justly entitled to very special protection." *Aqua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184, 1188 (9th Cir. 1971) (Ely, J., dissenting), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). The relationship between the federal government and the American Indian is like that between a guardian and his ward, thereby placing the Indian in a peculiar and protected status. *United States v. Kabinto,* 456 F.2d 1087 (9th Cir.), *cert. denied,* 409 U.S. 842, 93 S.Ct. 40, 34 L.Ed.2d 81 (1972); *Gray v. United States,* 394 F.2d 96 (9th Cir. 1967),

*cert. denied,* 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968). We view the enactment of the Indian Civil Rights Act as evidence of this continuing congressional solicitude for the welfare of the American Indian. The courts of the United States must be correspondingly more available to adjudicate, enforce, and protect the civil rights specifically granted to the Indian peoples by the Congress. Consequently, if a state court determination of a claim under the Indian Civil Rights Act [2] is transparently erroneous, the District Court, in order to prevent a miscarriage of justice, need not accord full adjudicatory effect to the state court decision.[3] Similarly, the District Court may also reach the merits of the claim if the federal claims were not raised at all in the state court [4] and the application of *res judicata* would work a serious injustice upon the claimant. That situation, however, does not exist in this case.

The judgment of the District Court is AFFIRMED.

**2.** A claim under the Indian Civil Rights Act includes a constitutional claim identical to that here involved.

**3.** Although our duty to recognize state judgments is founded on 28 U.S.C. § 1738, which requires federal courts to give state judgments the same "full faith and credit" that the judgments would be given in the jurisdiction of their rendition, it is recognized that the implementation of federal statutes representing countervailing and compelling federal policies justifies departures from a strict application of that rule. *E. g., American Mannex Corp. v. Rozands,* 462 F.2d 688, 690 (5th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972); *Lyons v. Westinghouse Elec. Corp.,* 222 F.2d 184, 188–90 (2d Cir.), *cert. denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955); *Porter v. Nossen,* 360 F.Supp. 527, 528 (M.D. Pa.1973); *Batiste v. Furnco Constr. Corp.,* 350 F.Supp. 10, 14–15 (N.D.Ill.1972). *See* Note, 88 Harv.L.Rev. 453, 455–57 (1974). We view the

Indian Civil Rights Act as further implementation of that federal policy.

**4.** When there is a strong interest in providing a federal forum, as here, the availability of Supreme Court review as a check on state court determinations of federal rights is inadequate to satisfy such policy. The litigants are denied a federal fact finding, an especially important factor if for some reason the litigant has failed to raise the issue in the state court. And, of course, the Supreme Court's heavy caseload limits it to a review of a relatively small number of cases. *See England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 416, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). We do not hold that the District Court is required to provide a federal forum for *de novo* relitigation in every case. But we believe that the undeniable policy of the Government toward the Indians requires that the courts of the United States must ever be available at the trial level to prevent miscarriages of justice.