[No. 14777-1-III.    Division Three.    February 27, 1997.]

THE CITY OF YAKIMA, *Respondent,* v. WILLIAM H. AUBREY, *Petitioner.*

*Charles C. Flower, Patrick M. Andreotti,* and *Flower & Andreotti,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Lauri M. Boyd, Deputy,* for respondent.

SWEENEY, C.J. — The City of Yakima charged William H. Aubrey with driving while intoxicated in April 1989. The court ordered a deferred prosecution. After Mr. Aubrey failed to comply with the terms of the deferred prosecution program, the district court revoked the deferred prosecution in August 1992. It then convicted Mr. Aubrey of driving while intoxicated and sentenced him. He appealed. While his appeal was pending, Mr. Aubrey's sentence was stayed. He was released. He then moved to the Blackfeet Indian Reservation in Browning, Montana.

The Washington State Supreme Court denied review of Mr. Aubrey's conviction in July 1994. On September 2, 1994, the district court ordered him to appear on October 3 for sentencing. But on September 29, following Mr. Aubrey's ex parte petition to the Blackfeet Tribal Court, the tribal court ordered him not to leave the reservation. The tribal court supported subject matter jurisdiction with a conclusion that "the issues raised by Petitioner in this case affect the political integrity, economic security, health and welfare of the Blackfeet Indian Tribe and its members . . . ."

Mr. Aubrey then asked the Yakima County District Court to continue his sentencing hearing. It refused, forfeited his bail, and issued an arrest warrant. Mr. Aubrey appealed to the Yakima County Superior Court. On February 22, 1995, the Yakima County Superior Court ruled that the issues presented by Mr. Aubrey were not

final and therefore not appealable. It then threatened to dismiss Mr. Aubrey's appeal if he did not submit to the district court's jurisdiction within 30 days. Mr. Aubrey did not appear. The superior court dismissed his appeal. He then moved for discretionary review. We accepted review.

The question presented is whether the Yakima County District Court must extend full faith and credit to the Blackfeet Tribal Court's order. We conclude that the tribal court lacked subject matter jurisdiction because Mr. Aubrey's ex parte petition did not present a case in controversy. The district court therefore properly refused to extend full faith and credit to the tribal court's order. The decisions of the district court and the superior court are therefore affirmed.

## DISCUSSION

■ **Appealable Final Decision.**    Preliminarily, we address Mr. Aubrey's assignment of error to the trial court's conclusion that the decisions of the district court were not final and therefore not appealable. RALJ 2.2(a) allows a party to appeal from a "final decision" of a court of limited jurisdiction. Whether the district court's refusal to continue the hearing on the imposition of sentence, forfeiture of bail, and issuance of a warrant amounts to a "final decision" depends on whether it affects a "substantial right." *See* RAP 2.2(a)(13).

Here, the orders most certainly affect a substantial right. If the Yakima County District Court extends full faith and credit to the tribal court's order prohibiting Mr. Aubrey from leaving the reservation, he is not a fugitive and the denial of the continuance, forfeiture of bail, and issuance of an arrest warrant were erroneous. *See State v. Heslin*, 63 Wn.2d 957, 960, 389 P.2d 892 (1964). If, on the other hand, the court is not required to extend full faith and credit to the tribal court order, Mr. Aubrey is a fugitive. *See State v. Johnson*, 105 Wn.2d 92, 97-98, 711 P.2d 1017 (1986). The orders of the district court therefore are appealable.

Full Faith and Credit. "Tribal court decrees are entitled to full faith and credit to the same extent as decrees of sister states." *In re Adoption of Buehl*, 87 Wn.2d 649, 663, 555 P.2d 1334 (1976).

■■ The orders and judgments of a foreign court are entitled to the same recognition if:

(1) the foreign court actually had jurisdiction over both the subject matter and the parties; (2) the decree was not obtained fraudulently; (3) the decree was rendered under a system of law reasonably assuring the requisites of an impartial administration of justice—due notice and a hearing; and (4) the judgment did not contravene the public policy of the jurisdiction in which it is relied upon.

*In re Marriage of Red Fox*, 23 Or. App. 393, 542 P.2d 918, 921 (1975).

Full faith and credit need not be extended to a foreign judgment if the court lacked jurisdiction to hear a case in the first place. *In re Estate of Stein*, 78 Wn. App. 251, 261, 896 P.2d 740 (1995) ("a decree of a sister state may be subject to collateral attack for want of jurisdiction over the *subject matter* of the action . . . ." (emphasis added)), *review denied*, 128 Wn.2d 1014 (1996); *State ex rel. Eaglin v. Vestal*, 43 Wn. App. 663, 667, 719 P.2d 163 ("If the foreign court had jurisdiction of the parties and of the *subject matter*, and the foreign judgment is therefore valid where it was rendered, a court of this state must give full faith and credit to the foreign judgment . . . ." (emphasis added)), *review denied*, 106 Wn.2d 1007 (1986); *Buehl*, 87 Wn.2d at 663 (order entitled to full faith and credit because tribal court had jurisdiction over the *subject matter*); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 104 (1971) ("A judgment rendered without judicial jurisdiction . . . will not be recognized or enforced in other states.").

■■ The first question in our analysis then is whether the tribal court had subject matter jurisdiction. The tribal court order for which Mr. Aubrey asks full faith and credit recites that the tribal court has subject matter jurisdic-

tion "[b]ecause the issues raised by Petitioner in this case affect the political integrity, economic security, health and welfare of the Blackfeet Indian Tribe and its members . . . ." The statement is facially invalid to confer subject matter jurisdiction. While Mr. Aubrey's absence may well have all of the recited effects, he has not raised justiciable *issues*. An issue is

> [a] single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other. A fact put in controversy by the pleadings; such may either be issues of law or fact. An "issue" is a disputed point or question to which parties to action have narrowed their several allegations and upon which they are desirous of obtaining either decision of court on question of law or of court or jury on question of fact.

BLACK'S LAW DICTIONARY 831 (6th ed. 1990). Mr. Aubrey's petition presented no issue — factual or legal — for the tribal court to resolve. Requesting an order preventing a party from leaving the reservation may be a plea, or a petition to the court, but it creates no disputed point and it is not a controversy. There was then no issue for the tribal court to resolve.

■ Article III of the United States Constitution requires a case or controversy for the exercise of judicial power by federal courts. *International Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987). This is also the rule in Washington:

> The action . . . must be adversary in character between real parties and upon real issues, that is, between a plaintiff and defendant having opposing interests, and the interests must be direct and substantial and involve an actual as distinguished from a possible or potential dispute, to meet the requirements of justiciability.

*Washington Beauty College, Inc. v. Huse*, 195 Wash. 160, 164-65, 80 P.2d 403 (1938); *see also Nostrand v. Little*, 58 Wn.2d 111, 121-22, 361 P.2d 551 (1961) (recognizing need for justiciable controversy before a court can reach a deci-

sion on a particular issue), *appeal dismissed*, 368 U.S. 436 (1962). While the United States Constitution, including Article III, is not binding on tribal courts, the analysis provided by those cases construing Article III is instructive here. *Barbry v. Dauzat*, 576 So. 2d 1013, 1019 (La. Ct. App. 1991). Article III of the Constitution requires the existence of a case or controversy for the exercise of judicial power. *International Bhd. of Boilermakers*, 815 F.2d at 914.

In *Dow Chem. Co. v. United States Envtl. Protection Agency*, 605 F.2d 673, 678 (3d Cir. 1979), the court set out the elements for this constitutional requirement:

> (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

Significantly, each step of the *Dow Chem.* analysis uses the word "controversy." Here, there is no controversy, real or hypothetical. There is simply an ex parte petition; a petition which incidentally affects a case in controversy in Washington. While Mr. Aubrey's petition may provide a factual predicate for a decision (*Dow Chem.*'s second requirement), the third requirement of *Dow Chem.* remains unsatisfied. There are no adverse parties; there is only Mr. Aubrey. And, as we have noted, not only are there no "sufficiently adverse parties . . . to sharpen the issues for judicial resolution," there are no issues.[1] *Dow Chem.*, 605 F.2d at 678.

---

[1]Recently our Supreme Court set out the requirements for a justiciable controversy in the context of a declaratory judgment action: "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive." *Osborn v. Grant County*, 130 Wn.2d 615, 631, 926 P.2d 911 (1996) (quoting *Ronken v. Board of County Comm'rs*, 89 Wn.2d 304, 310, 572 P.2d 1 (1977)).

■ Further, Mr. Aubrey is not incarcerated or detained at the request of Blackfeet tribal authorities. His restraint is of his own doing and could be undone by his own doing. He holds the key to his own detention. His restraint is also civil in nature. It is, therefore, distinguishable from those cases he cites for the proposition that incarceration or detention, in another state, excuses compliance with a lawful court order. *See State v. Ortiz*, 113 Wn.2d 32, 774 P.2d 1229 (1989); *Heslin*, 63 Wn.2d 957; *State v. Olsen*, 54 Wn.2d 272, 340 P.2d 171 (1959).

Here, the Blackfeet Tribal Court did not try to stay proceedings in the Yakima County District Court or otherwise usurp its jurisdiction. It simply entered an order which prohibited Mr. Aubrey from leaving the reservation. If the tribal court had jurisdiction to enter such an order, then Washington should extend full faith and credit to it. This situation would be analogous, but not identical, to those cases in which proceedings in one jurisdiction are effectively disrupted by proceedings in another jurisdiction. In criminal cases there are interstate compacts to resolve these conflicts. *See* RCW 9.100 (agreement on detainers). Custody proceedings are also governed by statute. *See* RCW 26.27.060 (simultaneous proceedings in other states). Accordingly, if the Blackfeet Tribal Court had jurisdiction, then its order was validly entered and some other vehicle must be found to secure Mr. Aubrey's presence at the Yakima County District Court proceeding. But it did not.

■ Finally, to be entitled to full faith and credit, this foreign judgment must "not contravene the public policy of the jurisdiction in which it is relied upon." *Red Fox*, 542 P.2d at 921. This tribal court order does contravene public policy. The tribal court effectively prevented a Washington district court from sentencing Mr. Aubrey for the crime he committed; a district court whose jurisdiction has never been disputed.

■■ It is clear that "[a] court not only has the right, but it is its duty to make its decrees effective and to

prevent evasions thereof." *Goodsell v. Goodsell*, 38 Wn.2d 135, 138, 288 P.2d 155 (1951). Here, the district court had the power "[t]o compel obedience to its judgments, decrees, orders and process . . . ." RCW 2.28.010. We cannot countenance a practice which permits a criminal defendant to evade the lawful execution of a sentence by obtaining an ex parte order from a neighboring jurisdiction precluding him from leaving that jurisdiction. To do so undermines the important legal policy of permitting a court to enforce its own orders. If allowed to stand, any member of a tribe could avoid the lawful execution of an otherwise valid state court judgment—here a sentence—by petitioning ex parte for an order providing relief from that judgment. This would be a new and novel practice, one for which we are unable to find any authority.

We, accordingly, affirm the judgments of the district court and the superior court.

SCHULTHEIS and KURTZ, JJ., concur.

Review denied at 132 Wn.2d 1011 (1997).