**Stanley JOHNSON, Plaintiff-Appellant,**

v.

**The LOWER ELWHA TRIBAL COMMUNITY OF the LOWER ELWHA INDIAN RESERVATION, WASHINGTON, Defendant-Appellee.**

No. 73-1200.

United States Court of Appeals, Ninth Circuit.

Sept. 4, 1973.

Michael Taylor, Washington, D. C. (argued), Legal Services Center, Seattle, Wash., for plaintiff-appellant.

Neil T. Proto, Seattle, Wash. (argued), Kent Frizzell, Wallace H. Johnson, Asst. Attys. Gen., Dept. of Justice, Washington, D. C., Stan Pitkin, U. S. Atty., Stuart Pierson, Thomas P. Giere, Asst. U. S. Attys., Seattle, Wash., Carl Strass, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before HAMLIN and TRASK, Circuit Judges, and BELLONI,* District Judge.

TRASK, Circuit Judge:

This is an appeal from an order of the District Court for the Western District

---

* Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

of Washington granting defendant-appellee's motion to dismiss for lack of jurisdiction. The court concluded that "the matters alleged in the complaint relate to a strictly intra-tribal matter."

The appellant, Stanley Johnson, is an enrolled member of the Lower Elwha Tribal Community, an Indian tribe organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 476, (Wheeler-Howard Act) and located on land purchased by the United States in 1936 and 1937. This land was proclaimed to be the Lower Elwha Reservation in 1968.

25 U.S.C. § 465 provides that:

> "Title to any lands or rights acquired pursuant to sections [of this Act] shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, . . . ."

A constitution and by-laws were adopted by the Lower Elwha tribe on April 6, 1968, and were approved by the Secretary of the Interior on April 29, 1968. Under article I of their constitution the territory of the tribe includes all lands within the boundaries of the reservation purchased under the authority of the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 476. Under article III of that constitution, the Lower Elwha Tribal Community Council was designated as the governing body of the tribe, and under article IV the Council was authorized

> "To encumber, lease, permit, sell, assign, manage or provide for the management of community lands, interests in such lands . . . and to regulate the use and disposition of community property of all kinds, subject to the approval of the Secretary of the Interior . . . ."

Thus it appears that the corporation, as recipient of the beneficial interest in the lands held in trust, vested the authority to assign the use and possession of community lands in the Tribal Community Council. Under a document labeled an "ordinance," (Standard Assignment Ordinance adopted by the Council in 1970, pursuant to the tribal constitution) these assignments were to be "made only to individuals who meet .the requirements for membership." There is no dispute that appellant was a member of the community.

No tribal court or justice system was provided for, nor does any presently exist. Neither the constitution nor the by-laws adopted by the tribe give express consent for the tribe or its members to sue and be sued in any court system.

In August of 1970, appellant was assigned a ten-acre tract of land within the reservation for life, and in September he and his family moved onto that tract, improved it with a home and some fencing, and maintained a garden, an orchard and a herd of cattle.

In December of 1971, after a consultation with the then Chairman of the Lower Elwha Community Council during which the appellant allegedly was advised that he could move from his tract without risking cancellation of his assignment, appellant moved his family to a house nearby the reservation. He leased the house on the reservation tract to Marvin Williams, another member of the Lower Elwha Community, and appellant periodically returned to tend the garden and orchard and herd his cattle.[1]

On April 10, 1972, appellant was notified by letter that the Community Council had decided to instruct the tenant (Williams) not to pay rent to appellant, and that appellant could no longer have the use of the tract and improvements because in its opinion he had abandoned it. Appellant requested a hearing pursuant to the Standard Assignment Ordinance § 2, which requires that an "as-

---

1. The case came before the trial court on a complaint to which a motion to dismiss was addressed. In such posture the allegations of the complaint which are well pleaded are to be taken as true. Potrero Hill Community Action Committee v. Housing Authority, 410 F.2d 974 (9th Cir. 1969) ; Doff v. Brunswick Corp., 372 F.2d 801 (9th Cir. 1966), cert. denied, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967).

signee" shall be given notice and an opportunity to be heard before his assignment may be cancelled. It was not until April 24, 1972 at 3:30 p.m. that appellant was informed his hearing would be held the next evening, April 25 at 7:00 p.m. Appellant objected to the insufficient time, and did not appear the next evening so as not to acquiesce in what he deemed irregular procedure. It is not clear whether appellant ever requested another hearing, but no other hearing was set. The Tribal Community Council then cancelled appellant's assignment and ordered him not to enter upon that tract.

Appellant argues that the district court had jurisdiction over this action which he alleged to be a denial of due process and equal protection under the Fourteenth Amendment to the United States Constitution; under the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302; under the constitution and by-laws of the Lower Elwha Tribal Community; and under the Standard Assignment Ordinance of the Community. Appellant alleges jurisdiction under 25 U. S.C. § 1302, constitutional rights of Indians; 25 U.S.C. § 476, organization of Indian tribes; and 28 U.S.C. § 1331, federal question jurisdiction.

■ We hold that the district court could have assumed jurisdiction under 25 U.S.C. § 1302(8) and 28 U.S.C. § 1343(4),[2] and remand for further proceedings on the merits of the alleged denial of due process.

■■ We are persuaded that the Indian Civil Rights Act provides a jurisdictional basis for the federal district court because the Act evidences a Congressional exception to the general policy of immunity of Indian tribes from suit. Appellee contends that the Act by itself does not provide a sufficient statutory basis for federal jurisdiction, and that appellant's allegations of fact are insufficient to meet the requirements of a well-pleaded complaint. Appellee also urges that Johnson's present residence off the reservation precludes him from claiming the protections of the Act.

The passage of the Indian Civil Rights Act of 1968

"appears to have been tailored by Congress to the purpose of enhancing the civil liberties of individual Indians without unduly undermining Indian self-government and cultural autonomy." McCurdy v. Steele, 353 F.Supp. 629, 632 (D.Utah 1973).[3]

Under 25 U.S.C. § 1302:

"No Indian tribe in exercising powers of self-government shall—

\* \* \* \* \* \*

"(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law; . . ."[4]

---

2. 28 U.S.C. § 1343 provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \*

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, . . ."

3. *See generally* Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1359–60 (1960).

4. During oral argument, counsel for appellee urged that due process within the meaning of 25 U.S.C. § 1302 did not have the same meaning as traditional notions of due process under the Fourteenth Amendment.

There may be some provisions of the Indian Civil Rights Act that under some circumstances may have a modified meaning because of the special historical nature of particular tribal customs or organization. However, this is not one of them. The Hearings on H.R. 15419 and Related Bills Before the Subcomm. on Indian Affairs of the Comm. on Interior and Insular Affairs, 90th Cong., 2d Sess.: "Rights of Members of Indian Tribes," at 17 (1968), in discussing title I (now 25 U.S.C. § 1302) dealing with the denial of rights by tribal governments state that:

". . . any Indian tribe in exercising its powers of local self-government shall, with certain exceptions, be subject to the same limitations and restraints as those which are imposed on the Govern-

The alleged conduct of the tribe in depriving appellant of his ·assignment and of his tenant without a meaningful opportunity to be heard falls within § 1302(8). *See, e.g.,* Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (right to notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner).

■ Appellee contends that the Act by itself is not jurisdictional. However, the pre-existing grant of jurisdiction under 28 U.S.C. § 1343(4) serves as a basis upon which to enforce alleged violations of provisions of the Indian Civil Rights Act which would, if appellee's argument were accepted, be unenforceable and thus almost meaningless. McCurdy v. Steele, 353 F.Supp. 629, 635 (D. Utah 1973); Seneca Constitutional Rights Organization v. George, 348 F. Supp. 48, 50 (W.D.N.Y.1972); Solomon v. LaRose, 335 F.Supp. 715, 721 (D. Neb.1971); Spotted Eagle v. Blackfeet Tribe, 301 F.Supp. 85, 89 (D.Mont. 1969); Dodge v. Nakai, 298 F.Supp. 17, 25 (D.Ariz.1968); Note, 82 Harv.L.Rev. supra, n. 3 at 1371–73;[5] The rationale behind these cases, with which we agree, is that the Indian Civil Rights Act creates a substantive body of rights, patterned in part on the Bill of Rights, to "extricate the individual Indian" from decisions holding that a controversy between an Indian and his trial government was an internal controversy. *See* Solomon v. LaRose, *supra*, 335 F.Supp. at 718 n.3. This legislation at least by implication. has waived whatever immunity Indian tribes had in this area prior to its enactment.[6]

■ Appellee contends that appellant did not have a vested property right that could be affected by tribal Council action, and thus failed to furnish a well-pleaded complaint. We find no basis for extending the well-pleaded complaint rules developed under 28 U.S.C. § 1331 to another jurisdictional section, but regardless, we note that appellees agree that Johnson has at least been deprived of the interest in continued possession and use of his assignment, an interest which has been found to be significant and thus to come within the protection of the due process protection of the Fourteenth Amendment. Fuentes v. Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

ment of the United States by the Constitution."

It thus appears when the bill which was later enacted as 25 U.S.C. § 1302 was before the House Subcommittee, it was the clear intention of that body that the due process restrictions of the bill should be interpreted in the same way when applied to a tribe as when applied to the United States or to the states.

The legislative history states:

"By a unanimous vote, the subcommittee sought to extend constitutional rights to the American Indians, . . .

\*      \*      \*      \*      \*

". . . the substitute bill would grant to the American Indians enumerated constitutional rights and protection from arbitrary action in their relationship with tribal governments, . . ." 2 U.S. Code Cong. & Admin.News at p. 1864 (1968).

Additionally, the constitution adopted by the Lower Elwha Community provides in part:

"No member shall be denied any of the rights or guarantees enjoyed by citizens under the constitution of the United States, including . . . due process of law." Article VII, Bill of Rights.

5. The Supreme Court in situations similar to this has implied an appropriate remedy (usually a private cause of action) to carry out Congressional purposes. *See, e. g.,* Jones v. Alfred H. Mayer Co., 392 U.S. 409, 414 n. 13, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (violation of 42 U.S.C. § 1982, racial discrimination in the sale or rental of property); Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) (violation of section 15 of the Rivers and Harbors Act of 1899); J. I. Case Co. v. Borak, 377 U.S. 426, 431–435, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1954) (violation of section 14(a) of the Securities Exchange Act of 1934). ·

6. *Accord,* Seneca Constitutional Rights Organization v. George, 348 F.Supp. 48, 50 (W.D.N.Y.1972); Loncassion v. Leekity, 334 F.Supp. 370, 373 (D.N.M.1971).

Appellee's argument relating to Johnson's residence off the reservation goes to the abandonment issue, rather than to jurisdiction.

Having found jurisdiction under 25 U.S.C. § 1302(8) and 28 U.S.C. § 1343(4), we do not decide whether the district court also had jurisdiction under 28 U.S.C. § 1331 (*see* Dodge v. Nakai, 298 F.Supp. 17, 25 (D.Ariz.1968)) or whether, because of the plenary authority of Congress over Indian tribes and the lack of any system of justice on the Lower Elwha Reservation, the federal courts would have jurisdiction under 25 U.S.C. § 476 until tribal courts were established. *See* Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); 25 C.F.R. § 11.1(d); *cf.* Settler v. Yakima Tribal Court, 419 F.2d 486 (9th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1690, 26 L.Ed.2d 61 (1970); Littell v. Nakai, 344 F.2d 486 (9th Cir. 1965), cert. denied, 382 U.S. 986, 86 S.Ct. 531, 15 L. Ed.2d 474 (1966).

Reversed and remanded for further proceedings in light of this opinion.