Berdina CROWE, Ernestine Walkingstick, Nancy Rose Long, John C. Standingdeer, Sr., Pauline Thompson Gutierrez, Ella Jackson, Helen Jacobs, Geraldine Sarah Thompson, Robert S. Youngdeer, Ruth Taylor and Richard (Geet) Crowe, on behalf of themselves and all other eligible enrolled voters of the Eastern Band of Cherokee Indians similarly situated, Plaintiffs,

v.

### EASTERN BAND OF CHEROKEE INDIANS, INC., Defendant.

### No. BC–C–77–136.

United States District Court, W. D. North Carolina, Bryson City Division.

Dec. 2, 1977.

Wesley F. Talman, Jr., Asheville, N. C., for plaintiffs.

Ben O. Bridgers, Holt, Haire & Bridgers, P. A., Sylva, N. C., for defendant.

## MEMORANDUM OF DECISION

JONES, Chief Judge.

The Plaintiffs, as enrolled members and voters of the Eastern Band of Cherokee Indians, bring this action contending that the Tribal Council permitted irregularities in the Tribal Voting Rules and Regulations during the September 1, 1977 Tribal Election and thereby violated their equal protection and due process rights guaranteed to them by the Indian Civil Rights Act of 1968, 25 U.S.C.A. 1302(8). They seek to invoke the jurisdiction of this Court under the provisions of 28 U.S.C.A. 1343(4) and pray for declaratory and injunctive relief. They also seek to represent all other eligible enrolled members and voters of the Eastern Band similarly situated.

The Court entered a temporary Order on October 26, 1977 restraining the Council from certifying the returns of the Tribal Election and on November 2, 1977, conducted a hearing on the Plaintiffs' Motion for a preliminary injunction pending the trial on the merits. The Defendant moved under Rule 12(b), Federal Rules of Civil Procedure to dismiss the action on the grounds that the complaint fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction to grant the relief sought by the Plaintiffs. After a careful consideration of the pleadings, affidavits, briefs and argument of counsel the Court now enters its findings and conclusions.

The Plaintiffs contend that during the September 1, 1977 election for Tribal Council and School Board members there occurred significant violations of the Charter granted by the State of North Carolina to the Eastern Band of Cherokee Indians and of Tribal Resolution 422 of 1977 which specified rules and regulations for the conduct of the election. They specifically allege that the election judges were not appointed sixty days before the election as required by Chapter 207, Section 5, Private Laws of North Carolina—1897. Section 5 provides that ". . . the council shall sixty (60) days preceding the election held for members of the council, appoint two (2) judges for every Indian town and settlement that is entitled to a member of council, who shall hold the elections for such town and settlement, and shall certify the results of the same, under such rules and regulations as may be prescribed by the council."

The Council in the exercise of this authority adopted Resolution 422 setting forth

the rules and regulations for the holding of the 1977 election for Council and School Board members. The Plaintiffs allege that the following violations of the Charter and the Resolution occurred during the September 1, 1977 election:

1. That the election judges were not appointed 60 days before the election as required by the Legislative Act and the Charter.

2. That the ballots had no space for write-in votes and were printed only in English and not in English and Cherokee as required by the Resolution.

3. That one successful candidate for the Council, Gerard Parker, is not a resident of the district from which he was elected in violation of the Resolution.

4. That a sister-in-law of Gerard Parker, a candidate for re-election to the Council served as a clerk at one of the voting places in violation of the Resolution.

5. That nine more votes were reported from Yellow Hill District and sixteen more votes were reported from Birdtown District than counted by the monitors for the Plaintiffs.

6. That the clerk and election judges in Tomotla voting district were not furnished a current list of eligible voters and used the 1975 election list, and required all voters claiming to be eligible and whose names were not on the list to sign their ballots.

7. That unauthorized persons were allowed to have custody of and transport the ballot boxes from the voting places to the Council-house, and that in one instance a candidate, Bailey Coleman, assisted in transporting a ballot box to the Council-house.

8. That more than one voter at a time was allowed to enter the voting place in Birdtown Community in violation of the Resolution.

9. That the Council did not certify the official ballot to be used as required by the Resolution.

10. On three occasions one judge, accompanied by a candidate, took ballots to handicapped voters seated in their cars in violation of the Resolution.

11. The polls in Wolftown were closed for a period of approximately twenty (20) minutes during the voting time in violation of the Resolution.

12. That the Motion before the Council to override the Tribal Chief's veto of the Council's finding that Gerard Parker was an eligible candidate for the Council failed to receive two-thirds (⅔) of the entire Council membership.

The Plaintiffs instituted an action in this Court on September 21, 1977 seeking to set aside the election. On September 29 the Court dismissed the action on the grounds that the Plaintiffs had not exhausted their Tribal rights since the Council had not been given an opportunity to act upon the complaints. Thereafter, at the request of the Plaintiffs, the Cherokee Tribal Council conducted public hearings relative to the 1977 election and the complaints filed by the Plaintiffs. The hearings lasted for three days, October 5, 6, and 7, 1977 and the Plaintiffs appeared with counsel and presented evidence. All of the complaints contained in the complaint filed in this action were presented to the Council and after hearing witnesses for both sides the Council voted upon each complaint separately. It made findings and conclusions and the entire proceeding was recorded and a copy attached to and made a part of the complaint in this Court.

The Council concluded that while there were some irregularities in the election procedures they were not of such nature as to require a new election, except as to the School Board member from Wolftown District. It found that the election officials were not appointed sixty (60) days before September 1, 1977 as required by the Act because of the recent changes in the election procedure to comply with this Court's order in *Wachacha, et al. v. Eastern Band of Cherokee Indians, Inc.* [This order required reapportionment of the elective districts of the Reservation to accord with *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)]. The Council concluded

that the failure to appoint the officials 60 days before the election did not interfere with the election or affect its outcome. It further found that there was ample space on the ballots for write-in votes and that while the ballots were not printed in both English and Cherokee there was no evidence that it had any effect on the election.

The Council concluded, after the hearing, that Gerard Parker is a resident of the district from which he was elected and voted to seat him. The Council heard evidence and concluded that the ballot boxes for Tomotla and Yellow Hill voting districts were not returned to the Council-house as required but that they were not tampered with. It found that the judge of Tomotla community is a female and that the round trip to the Council-house is more than 100 miles over mountain roads and that she requested Bailey Coleman, a candidate for the Council, and his wife to accompany her on the trip. She testified that he was nice enough to carry the ballot box but that she was present and had the key at all times, and that anyway he lost the election. Evidence was presented that the ballot box for Yellow Hill Community was returned to the Council-house by an election official, a door marshal and a Cherokee policeman, but that neither judge physically accompanied the box as required by the Resolution. An election judge and the door marshal testified that the box was not tampered with in any way.

The Council heard evidence from the election officials that all precincts uniformly permitted two voters inside polling places at the same time. They testified that this procedure was followed and has been followed for years in order to expedite voting by large numbers of people at the polls before and after work hours. They testified that this procedure did not interfere with the election process nor did it affect the integrity of the votes cast.

The Council, after hearing the evidence and arguments pro and con voted on all complaints filed by the Plaintiffs and found and concluded that while there were some irregularities in the election that taken all together such violations did not affect the results of the Council election in any of the townships or districts. It therefore concluded that there should not be a new election in any township for Council members. However, the Council did find that there was some confusion in the election for the School Board in Wolftown Community and that there should be a new election for School Board member from that precinct. It specifically found that the violations of Election Rules and Regulations were not sufficient to require new elections for School Board members in other districts or communities. A majority of the Council determined that the results of the election fairly and accurately reflected to wishes and desires of the voters on the Reservation and that no new elections were ordered, except the School Board member from the Wolftown District.

As authorized by the Charter the Tribal Chief vetoed the action taken by the Council and his veto was not overridden. The Plaintiffs contend that the vote as to Gerard Parker's eligibility as a Council candidate was 5½ yes, 2¾ no and 2¼ abstained and that this action was vetoed by the Tribal Chief. They contend that the vote to override was 5½ yes, 2¾ no and 1¾ abstained, and that his approval did not receive a ⅔ majority required to override a veto and that the Council should be enjoined from certifying him as a duly elected Council member. The Chairman of the Council stated by affidavit that customary voting procedure of the Council is to determine the results of a vote by the yes and no votes without considering the abstentions.

It developed at the hearing that there is some confusion as who is responsible for the conduct of elections—who is charged with the duty to see that the election Resolution is carried out. As a result the Council voted to set up a Board of Elections and to place this responsibility with such body.

The Court will first consider the jurisdictional question. In *Crowe v. Eastern Band of Cherokee Indians, Inc.,* 506 F.2d 1231, 1233 (4th Cir. 1974), Judge Field said:

**338**

"As to the jurisdictional issue, we held in *United States v. Wright*, 53 F.2d 300 (4th Cir. 1931), that the Eastern Band of Cherokee Indians is an Indian Tribe within the meaning of the Constitution and Laws of the United States, and accordingly, absent jurisdiction under the Indian Civil Rights Act, jurisdiction of this controversy would be precluded by the well established rule 'that a tribe of Indians under the tutelage of the United States is not subject to suit without the consent of Congress . . . .' *Haile v. Saunooke*, 246 F.2d 293 (4th Cir. 1957); see *United States v. United States Fidelity Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). It is equally well established that a federal court has no jurisdiction over an intratribal controversy. *Motah v. United States*, 402 F.2d 1 (10th Cir. 1968); *Pinnow v. Shoshone Tribal Council*, D.C., 314 F.Supp. 1157, aff'd 453 F.2d 278 (10th Cir. 1971)."

In 1968 the Congress enacted the Indian Civil Rights Act, 25 U.S.C.A. §§ 1301–1303. Under Section 1302(8) the Congress declared:

"No Indian Tribe in exercising powers of self-government shall—

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."

28 U.S.C.A. 1343(4) provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

As the Court said in *Johnson v. Lower Elwha Tribal Community, etc.*, Wash., 484 F.2d 200, 202 (9th Cir. 1973):

"We are persuaded that the Indian Civil Rights Act provides a jurisdictional basis for the federal district court because the Act evidences a Congressional exception to the general policy of immunity of Indian Tribes from suit."

Judge Field in *Crowe v. Eastern Band of Cherokee Indians, Inc.*, *supra*, said:

"We agree with this jurisdictional conclusion of the Court below since Section 1343(4) provides a logical and specific basis of jurisdiction and to hold otherwise would render the provisions of the Act unenforceable and an exercise in Congressional futility. See *Johnson v. Lower Elwha Tribal Community, etc.*, Wash., 484 F.2d 200 (9th Cir. 1973)."

Serious doubts exist as to whether federal courts may exercise jurisdiction over tribal elections under 25 U.S.C.A. 1302. The list of Constitutional rights enumerated in this section does not include the right of franchise. The list does include some of the rights reserved unto the people of the United States as set forth in the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and Article I, Clause 3 of the Constitution.

In *Groundhog v. Keeler*, 442 F.2d 674, 681 (10th Cir. 1971) the Court declared:

"(8) Plaintiffs also urge that the due process clause of the Fifth Amendment and the equal protection and due process clauses of the Fourteenth Amendment and the provisions of the Fifteenth Amendment, by the passage of 25 U.S.C. § 1302(8) of the Indian Bill of Rights, have been made applicable to the Cherokee Tribe.

The provisions of the Constitution of the United States have no application to Indian nations or their governments, except as they are expressly made so by the Constitution (the Commerce Clause), or are made applicable by an Act of Congress.

We think the legislative history of the so-called Indian Bill of Rights refutes the contentions of plaintiffs stated above.

The original bill to provide an Indian Bill of Rights, considered by the Senate Subcommittee, was brief and badly worded. It read as follows:

' * * * any Indian tribe, in exercising its powers of local self-government shall be subject to the same limitations and restraints as those which

are imposed on the Government of the United States by the United States Constitution.'

There were many objections to the broad language of the bill at the hearing, particularly as to the Fifteenth Amendment restraints embraced in the original bill.

The Department of the Interior submitted a substitute bill, which, with minor revisions, was introduced in the 90th Congress and eventually enacted into law as the present Indian Bill of Rights.

In its endorsement of the substitute bill, the summary of the report of the Senate Subcommittee on the Judiciary stated:

'The Department of Interior's bill would, in effect, impose upon the Indian governments the same restrictions applicable presently to the Federal and State governments with several notable exceptions, viz., the 15th amendment, certain of the procedural requirements of the 5th, 6th, and 7th amendments, and, in some respects, the equal protection requirement of the 14th amendment.'

The summary of the report of the Subcommittee was endorsed and adopted by the Senate Committee on the Judiciary. Such report makes it clear that Congress intended that the provisions of the Fifteenth Amendment, certain procedural provisions of the Fifth, Sixth, and Seventh Amendments, and in some respects the equal protection requirement of the Fourteenth Amendment should not be embraced in the Indian Bill of Rights.

It is also clear from such report that Congress was concerned primarily with tribal administration of justice and imposition of tribal penalties and forfeitures, and not with the specifics of tribal structure or officeholding. By its stated intentional exclusion from the Act of the provisions of the Fifteenth Amendment, any basis of federal court jurisdiction over tribal elections was definitely eliminated."

■ It therefore appears that Congress did not intend to confer jurisdiction upon federal courts to enforce any rights of franchise or to interfere with tribal elections or officeholding, except where the action of the Tribal Council in election and officeholding matters violates the due process or equal protection rights of a member or members of the Tribe.

In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court laid down the rule that the Equal Protection Clause of the Fourteenth Amendment could be invoked to require equal voting power in state legislatures. See *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. Later, in the case of *Avery v. Midland County, Texas*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the Court applied the principle to local governments. It has been held applicable to Indian Tribes through the Indian Civil Rights Act. *White Eagle v. One Feather*, 478 F.2d 1311 (8th Cir. 1973); *Daly v. United States*, 483 F.2d 700 (8th Cir. 1973), and *Brown v. United States*, 486 F.2d 658 (8th Cir. 1973).

In *One Feather, supra*, the Court held that where a tribe has adopted election procedures analogous to those found in Anglo-American culture, the equal protection clause of the Indian Civil Rights Act required that the election procedures comply with the one-man, one-vote principle established by *Baker v. Carr, supra*.

An examination of the Defendant's Charter from the State of North Carolina and the Resolution setting forth the rules and regulations for the September 1, 1977 election reveals that the Council has adopted election procedures patterned after those of North Carolina. This Court held in *Wachacha et al. v. Eastern Band of Cherokee Indians, Inc.* (1974), that the equal protection clause of the Indian Civil Rights Act required that the Council reapportion the Reservation to comply with the one-man, one-vote principle established by *Baker v. Carr, supra*.

This Court holds that the equal protection and due process clause of the Indian Civil Rights Act would apply to the election pro-

cedures adopted by the Defendant Council and that since the Plaintiffs have exhausted their tribal remedies prior to filing this action jurisdiction would lie in this Court if the Plaintiffs have stated a cause of action in their complaint.

The complaint sets forth some twenty-four separate instances in which the Plaintiffs say the Tribal Council failed to comply with the provisions of the Charter and the Resolution pertaining to holding an election. Among these claims are allegations of specific irregularities in the voting process at the polls. The Council conducted a full hearing after notice and the Plaintiffs appeared and presented evidence. Their attorney was permitted to examine witnesses and make arguments to the Council. Most of the alleged irregularities were explained by the evidence and it is apparent that they could not have affected the outcome of the election. In most instances there were no reasonable grounds offered why the Council did not follow the requirements of the Charter and its own Resolution in conducting the election. Nevertheless, there was no showing at the hearing that such failures and shortcomings materially affected the results of the election.

A reading of the complaint and all of the exhibits attached and made a part thereof and construing the contents in a light most favorable to the Plaintiffs the Court reaches the inescapable conclusion that the irregularities alleged when viewed in light of the evidence before the Council do not rise to constitutional proportions. The Plaintiffs not only ask this Court to declare the election null and void but that a new election be conducted under the direction of federal officials. If the Plaintiffs' theory of the law were accepted, this Court would henceforth be thrust into the details of virtually every election held on the Reservation, tinkering with the election machinery, registration books, vote tallies and the qualifications of the candidates. This Court finds no constitutional basis for interfering with Tribal elections in the absence of aggravating factors rising to substantial deprivation of constitutional rights.

There are no allegations that the Plaintiffs or any of the class which they seek to represent were denied the right to vote or to seek elective office on the Reservation. Nor is there any allegation of fraudulent interference with a free election by stuffing the ballot boxes or other unlawful conduct which interfered with the Plaintiffs' right to vote. They merely allege that the Council's failure to follow the Charter and its Resolution denied them due process of law and that the irregularities which followed denied them equal protection of the law.

As the Second Circuit held in *Powell v. Power*, 436 F.2d 84, 88 (2nd Cir. 1970) in an opinion by Judge Kaufman, now Chief Judge:

"Uneven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents 'intentional or purposeful discrimination.' *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) . . . Similarly, the due process clause . . . offer no guarantee against errors in the administration of an election . . . We cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error."

In view of the principles of Indian self government and tribal autonomy in intra-tribal matters, a clear violation of one of the protected rights under the Indian Civil Rights Act must be shown to state a claim upon which a federal court can grant relief. Courts should be slow to interfere with Tribal political processes. While this Court does not condone any violation of the election laws and procedures it appears that the irregularities alleged here do not reach constitutional proportions.

Upon a careful examination of the complaint and its attachments and after full consideration of the briefs and arguments of counsel, the Court concludes that the Defendant's Motion to Dismiss must be allowed and the action dismissed for failure to state a claim upon which the Court can grant relief. The Court will enter an Order

simultaneously herewith dissolving the temporary restraining order, denying the preliminary injunction and dismissing the action.